SAMUEL J. SACKETT, Administrator, Appellant, v. FARMERS STATE BANK OF BOONE, Appellee.

No. 39572.

DECEMBER 13, 1929.

*William H. Scofield, F. R. Lilyard,* and *T. J. Mahoney,* for appellant.

*Dyer, Jordan & Dyer,* for appellee.

EVANS, J.—The intestate was Frank Robertson, who died in Denver, September 29, 1922. At the time of his death, he had apparently on deposit in the defendant bank the sum of $10,980, represented by several certificates. Prior to October 6, 1922, these certificates were forwarded by a Denver bank to the defendant bank for payment. They carried the purported indorsement of the payee. They were paid by the defendant on October 6, 1922. The plaintiff, as administrator, sued upon the certificates as being unpaid, though in the possession of the defendant. He averred that the indorsements appearing upon said certificates were forgeries. The defendant bank pleaded payment of the certificates, and denied the alleged forgery. It also pleaded the bar of a former election of remedies by the plaintiff. On the trial, evidence was introduced in support of both defenses, and both issues were submitted to the jury. The jury rendered a general verdict for the defendant. It made no special findings. It does not appear therefrom whether the jury sustained both defenses or only one. This uncertainty rendered both defenses subject to review here. The plaintiff, however, as appellant, has

confined his grounds of reversal to the second defense, and we shall have no need to review the record on the issue of forgery. The defendant's plea of a former election of remedies by the plaintiff was predicated upon a former action prosecuted by the plaintiff in the state of Colorado against the alleged forger, Lucille Palmer, who had caused the collection of the certificates through the Denver bank. The facts pertaining to said action in Colorado may be stated briefly.

In 1923, Lucille Palmer brought an action in the district court of Denver against Sackett, administrator (plaintiff herein), and against all the alleged heirs of Frank Robertson, deceased, in which she set up an alleged contract between herself and Frank Robertson, whereby she promised to become his housekeeper and to care for him the rest of his life, and whereby, in consideration thereof, she should take all of his estate at the time of his decease. Her complaint set forth a description of considerable property owned by the decedent in Denver, and averred that the administrator (plaintiff herein) was in possession thereof, and was holding the same adversely to her. Her complaint also averred that she had received from Frank Robertson the certain certificates of deposit, duly indorsed by him, which certificates are the subject of this controversy. She prayed for a decree confirming her contract and her title to all the property. The administrator (plaintiff herein) appeared to the action, and filed an answer, denying substantially all the allegations of the complaint. As a further defense, he pleaded a cross-complaint, in which he averred that the said plaintiff (Lucille Palmer) had maliciously and fraudulently obtained possession of the certificates (in controversy herein), and had fraudulently collected the same, and that she held the proceeds thereof; that he had made demand upon her for said "certificates of deposit or the proceeds thereof." He prayed judgment against her for $10,980, with interest at 4 per cent from March 1, 1922 (date of certificates), to October 6, 1922, and at the rate of "8 per cent from October 6, 1922, to the date plaintiff shall *repay this defendant said sum.*" He also prayed that the court find malice and fraud, and that a body execution issue on that ground. Decree was awarded, as prayed. From this judgment an appeal was prosecuted to the Supreme Court of Colorado, which affirmed the judgment below. This is the former proceeding which is relied

upon by the defendant herein as an election of remedies on the part of the plaintiff herein.

It is the contention of the defendant herein that the former remedy sought by the administrator in the cross-complaint herein referred to was necessarily inconsistent with the relief which he now seeks in this proceeding.

The broad rule pertaining to the bar of election of remedies was concisely stated in an early day in the case of *Kearney Mill. & Elev. Co. v. Union Pac. R. Co.*, 97. Iowa 719, as follows:

" 'A man may not take two contradictory positions; and, where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of. knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.' "

The foregoing has been recognized and adhered to by us in many subsequent cases. The accuracy of the statement is not challenged by the appellant. The appellant stoutly contends, however, that his cross-complaint in the Denver court was not such an election of remedies as would operate as a bar against the present action. He predicates his argument upon three main grounds: (1) There is no inconsistency between the remedy sought by him in his former cross-complaint and the remedy now sought by him in this action; (2) that, when he pursued his cross-complaint and took judgment thereon, he was lacking in knowledge of requisite facts and circumstances, and that his want of knowledge was such as to avoid the bar of the alleged election; (3) that he was a mere administrator of an estate, without authority from the court to make an election of remedies or to waive any remedy which was then available to him as such administrator. These contentions are made to appear in the record by proper objections to evidence and to instructions and by proper request for instructions. We deal with the argument ·as a whole, rather than with the specific offers and objections appearing in the record.

I. The law is prolific in the remedies which it affords to an injured party to redress a wrong. This is particularly so as to wrongs which sound in tort. Some remedies are concurrent and

cumulative. Many others are optional and inconsistent, and therefore exclusive. The doctrine of election of remedies has application only to *inconsistent* remedies. Where two or more optional remedies are provided which are inconsistent in theory and contradictory in their logical premises, the doctrine of election arises, as a logical necessity. In such a case, to select and pursue one is to discard the others. Our first inquiry, therefore, is directed to the question of the alleged inconsistency of the remedy sought by the plaintiff in the Denver court with the remedy sought by him herein. That we may have before us definitely the relief sought by him in the Denver court, we incorporate herein a copy of material portions of his cross-complaint, and sufficient thereof to indicate its general character:

"Fourth: That, after the decease of the said Frank Robertson, and on or about October 6, 1922, the plaintiff took possession of said certificates of deposit, and thereafter collected from said Farmers State Bank of Boone, Iowa, or caused to be collected from said Farmers State Bank of Boone, Iowa, the full amount of principal represented by said certificates of deposit, and as hereinabove set forth, together with interest thereon to the date of such payment by said Farmers State Bank of Boone, Iowa.

"Fifth: That the plaintiff, in taking possession of said certificates of deposit and in the *collecting of the proceeds* thereof, and as hereinabove alleged, has been guilty, and is guilty, of willful malice, fraud, and deceit; and that the said plaintiff, in taking possession of said certificates of deposit and the *securing payment of the proceeds thereof,* did so with the intent to deceive and defraud this defendant, as administrator of the estate of Frank Robertson, deceased, and with the intent to deceive and defraud the lawful heirs at law of the said Frank Robertson, deceased.

"Sixth: That this defendant has made demand upon the plaintiff to return said certificates of deposit, *or the proceeds* thereof, to him, as administrator of said estate, but that the plaintiff fails and refuses so to do."

If the certificates were horses, and if Palmer had stolen them and had sold them to this defendant bank as an innocent purchaser, we would have a typical case of multiplicity of optional remedies wherewith to illustrate the doctrine of election of

remedies. In such a case, Robertson, as the owner, would be afforded, under the law, a variety of optional remedies. For the purpose of our illustration, we select two of them: (1) He could sue this defendant in replevin or detinue; (2) he could sue Palmer for the proceeds of sale that she had received from defendant.

To pursue Remedy No. 1 would be a repudiation of every act of Palmer's and an assertion of plaintiff's original title. In such event, the purchaser's remedy would be by an action against Palmer. If the owner should pursue Remedy No. 2, this would be an election to confirm the sale and to take the benefit thereof and to treat the proceeds of the sale as having been received by Palmer to the use and benefit of the owner. In legal effect, it would bar the purchaser of the property from any right of action against Palmer for the wrongful sale thereof.

Such, in brief, is the method of operation of the doctrine of election of remedies. Our cases on the subject are too numerous for complete citation. Some of them are the following: *Keene Five Cents Sav. Bank v. Archer,* 109 Iowa 419; *Kearney Mill. & Elev. Co. v. Union Pac. R. Co.,* 97 Iowa 719; *Klocow v. Patten,* 93 Iowa 432; *Homire v. Rodgers,* 74 Iowa 395; *Boysen v. Petersen,* 203 Iowa 1073; and *Murray v. McDonald,* 203 Iowa 418.

The plaintiff did pursue a remedy in the Denver court, and pursued the same successfully to a final money judgment for the full amount of his claim. Which of the above defined remedies did he pursue? The court below construed his pleading as a suit for the proceeds of the collection. We think that such was the proper interpretation of the pleading. The plaintiff challenges the interpretation, and contends that his cross-complaint was a claim for damages for conversion. With this contention, he concedes in argument that, if he had sued for the proceeds, he would be barred by the election. We need, therefore, give no further attention to the particular question whether a former suit for the proceeds, without judgment, would be such an election of remedies as would bar the present action. Nor do we consider whether it would avail anything to plaintiff to show that his former action was for damages for conversion.

We have already set out sufficient of the plaintiff's pleading in the Denver court to indicate its general character. It did not denominate itself. It did not in terms purport to claim

damages. It did not contain the word "damages." It made no reference to the value of the property as a measure of damages. It prayed for a specific liquidated amount, and averred that such was the amount of the proceeds received by Palmer on October 6, 1922. On its face, the money judgment was a complete remedy. Plaintiff's answer to this suggestion is that his judgment *would* be a complete remedy, and that the bar of the election *would* be complete if satisfaction of the judgment were had. At this point, plaintiff relies upon the analogy of a right of action against joint wrongdoers. Such an action may be prosecuted by the injured party either severally or jointly. A judgment against one does not operate as a bar to an action against the other until satisfaction is had. This is not such a case, and the rule of law has no application hereto. The defendant-bank was not a joint wrongdoer with Palmer. It was simply one of the innocent parties who suffered potential injury by her wrongful act. As between the two innocent parties, the right of election of remedies was primarily with the plaintiff. The remedy open to this defendant was subject in the first instance to the plaintiff's election. The plaintiff did elect. By prosecuting his remedy to judgment against Palmer, he fixed the status, not only of himself and Palmer, but of the defendant-bank as well.

II. Did the plaintiff have adequate knowledge of the facts and circumstances affecting his rights, to bring into operation the doctrine of election? This doctrine is not intended either as a trap or as a penalty for a mere mistake. If a litigant, without adequate knowledge of the facts affecting his rights, mistakenly selects a remedy to his disadvantage, he may, upon timely discovery, abandon it and pursue another. Whether he may do so after judgment in his favor, we need not now consider. It is true, also, that, if a litigant mistakenly pursues a remedy to which he is not entitled, and in the pursuit of which he fails, he will not thereby be barred from pursuing a proper remedy. *Zimmerman v. Robinson & Co.*, 128 Iowa 72. Of this latter hypothesis we have nothing in this case. The remedy pursued in the Denver court by plaintiff was a *proper one*. Nor did he fail in the pursuit thereof.

As to his knowledge of facts, we find no conflict in the evidence. The testimony introduced on behalf of the plaintiff herein discloses that he had as much knowledge of the facts then as

he has now. Under his contention, from the beginning the large fact in the case was the alleged collection of the certificates upon *forged* indorsements. Plaintiff and his counsel asserted their belief from the beginning that the indorsements were forgeries. They prepared their evidence for the Denver trial in support of such contention, and they prevailed thereon. The record herein contains the substance of the opening statement of appellant's counsel at the trial of the Denver case. It comprised substantially the following:

"We expect to prove that, at the time of the death of Frank Robertson, in September, 1922, there were $11,900 in certificates of deposit which had been issued from that bank sometime previously, and that, on October 6, 1922, a little over a week after he died, the certificates were cashed by the Farmers State Bank of Boone, Iowa. The proof will further show that the indorsement of the name 'Frank Robertson' on the back of the certificates are forgery. The proof will further show that the claim of the plaintiff in this case was, the certificates were indorsed by Frank Robertson, a week prior to his death, by him with his own hand, and turned over to her by his own hand, and turned over to her in satisfaction or part performance of the contract which is alleged in the complaint. If we establish that these signatures are forgeries, we believe the court will find against the plaintiff and in favor of the defendant for the full face of the certificates, together with 8 per cent interest per annum. We have also asked for a finding that plaintiff was guilty of fraud in that transaction."

. Prior to filing the cross-complaint, the appellant's counsel came to Boone to interview the defendant bank and to inspect the certificates and their indorsements. He did so inspect them, having been allowed full liberty in that regard. At his request, the certificates were sent by the defendant bank to a bank in Denver, in order to enable the appellant to make further inspection and to do so with the aid of an expert. The defendant's expert (King) made an extended expert examination of every signature, and pronounced them all forgeries. He testified to that effect as the appellant's witness in the Denver case, and again in the case at bar. While the certificates were in the possession of the Denver bank, as bailee for this defendant, they were im-

pounded by the appellant, and were used as evidence in the trial of the Denver case. Nowhere in the record has the appellant specified or suggested any new material fact which has come to his knowledge since the filing of the cross-complaint in the Denver case. His contention is not that any new facts have come to his notice, but that he did not know to a certainty that he was correct in his belief, or that his expert was correct in his judgment. It is argued, therefore, that, in prosecuting his cross-complaint, he was acting without *actual knowledge of the facts*. This is only saying that he did not *personally* know the facts which he proposed to prove by his witness. He does not yet personally know them, nor will he ever acquire personal knowledge thereof. To adopt such a criterion of knowledge would be to destroy the whole doctrine of election. Knowledge, within the meaning of the law, may consist of credible information of the material facts and circumstances of the transaction under review, such as to enable the litigant to form a reasonable belief in relation thereto. The instructions of the court conformed to this criterion. Notwithstanding that there was no conflict in the evidence, and that a peremptory instruction might properly have been given on the subject, the court, nevertheless, submitted the issue to the jury as a question of fact.

In our judgment, the appellant has no ground of complaint at this point.

III. It is further contended that the appellant, as administrator of an estate, had no authority from the appointing court to waive any right accruing to the estate, and therefore no authority to make an election of remedies. He does not claim that he lacked authority to prosecute his cross-complaint. The bar of the election of remedies arises, if at all, of legal and logical necessity. If he had authority to pursue his remedy, he had equal authority to take its consequences. In the operation of the rule, we know of no exception in favor of a person suing in a representative capacity. The plaintiff pursued his remedy in a court of general jurisdiction, both in the Denver case and in the case at bar. The jurisdiction of each court was, and is, complete. He may not impeach his own authority to the detriment of the litigants whom he has impleaded. If he has violated any duty, as laid upon him by the appointing probate court, he is subject to the discipline of that court. For the purpose of this litigation,

he stands before the court like any other litigant. Appellant cites no authorities in support of his contention, and we find none. We have held that an administrator appearing as litigant in this court stands upon the same footing as any litigant, regardless of any permissive order by the court which appointed him. *Mortenson v. Knudson,* 189 Iowa 379; *In re Estate of Clark,* 203 Iowa 224. We are of opinion that this ground of reversal is not tenable.

Our foregoing pronouncements are decisive of all grounds of reversal presented by the appellant.

The judgment below is, accordingly,—*Affirmed.*

All the justices concur.