Harry W. Jennings, appellee, v. Leslie C. McKeen, executor
of estate of Rose B. McKeen, et al., appellants.

No. 48490.

(Reported in 65 N.W.2d 207)

June 15, 1954.

Rehearing Denied September 24, 1954.

Merle L. Royce, of Marshalltown, for appellants.

Roy L. Pell and Joe B. Tye, both of Marshalltown, for appellee.

Smith, J.—Alfonso L. and Rose B. McKeen, husband and wife, of Marshall County, executed a "Joint Will and Testament" as follows:

"Know All Men By These Presents: That we * * * do hereby make, utter, publish and declare the following to be our joint last will and testament * * * that is to say:

"*First:* We direct * * * (followed by directions as to payment of debts, expenses, etc.)

"*Second:* I, Alfonso L. McKeen, give, devise and bequeath unto Rose B. McKeen, my wife, if she survives me, all of my property both real and personal wherever situated.

"*Third:* If the said Rose B. McKeen does not survive me:

"(1) I * * * give, devise and bequeath unto Harry W. Jennings * * * in gratitude for services rendered to me, the sum of One Thousand Dollars ($1000).

"(2) (Contains an identical bequest of $1000 to another.)

"(3) (Sets up $1000 trust for cemetery upkeep.)

"(4) Should the personal property of my estate be insufficient to pay the above bequests, the same shall be and are hereby made a charge upon my real estate except my residence in Marshalltown, Iowa.

"(5) (Gives Marshalltown residence and contents to grandson Leslie Clyde McKeen, defendant herein.)

"(6) (Gives remainder of estate in trust for benefit of granddaughter Dorothy Jane McKeen, now defendant Dorothy McKeen Carver.)

"*Fourth:* (Names executor.)

"*Fifth:* I, Rose B. McKeen, give, devise and bequeath unto Alfonso L. McKeen, my husband, if he survives me, all of my property both real and personal wherever situated.

"*Sixth:* If the said Alfonso L. McKeen does not survive me:

(Under this are subparagraphs 1 to 6 inclusive, identical with the same numbered subparagraphs in paragraph *Third.*)

"*Seventh:* (Names executor, identical with *Fourth.)*

"IN WITNESS WHEREOF we have signed our names this 16th day of April, 1940.

"Alfonso L. McKeen
"Rose B. McKeen."

Witnesses' signatures are attached to the will and to the attestation clause which recites the presence of testators and witnesses at time of execution.

There is no contention as to the practically simultaneous signing by both testators, nor is there any claim of any revocation by either during Alfonso's lifetime.

Testators owned a large amount of real estate in joint tenancy and each had some property not jointly owned. Most of the real estate was in Tama County. Alfonso L. McKeen died October 10, 1940, and the will was probated as his will and his estate was administered under its provisions in Marshall County.

Thereafter, on November 12, 1946, Rose B. McKeen executed another will, purporting to revoke all previous wills and giving all her property after payment of debts and expenses to her grandchildren, defendants Leslie C. McKeen and Dorothy McKeen Carver.

On the same date Mrs. McKeen conveyed (without substantial consideration) to the same two grandchildren all the real estate she and her husband had previously owned in joint tenancy, including 850 acres of land in Tama County and also the Marshalltown residence. The deed reserved a life estate in grantor.

She died October 28, 1949, leaving no property in her own name sufficient to pay the $1000 legacy to plaintiff provided for in subparagraph 1 of paragraphs *Third* and *Sixth* of the joint will heretofore described. Her later will of November 12, 1946, was probated in Marshall County and in the administration proceeding plaintiff filed his claim for $1000 based on the bequest in the joint will. The court (the late Judge Tankersley presiding) held that testatrix had no right, as against said bequest, to convey the real estate and thus leave her estate without sufficient means to pay it.

The probate court allowed the claim, but, upon the executor's contention that the grantees of the deed were not parties to

the proceeding and the court was without jurisdiction, declined to establish it as a charge on the real estate that had been conveyed and held "that claimant must be left to enforce his claim in another proceeding." There was no appeal by either the claimant or the executor.

The present suit for specific performance is brought in Tama County where the land is situated. Plaintiff asks that the instrument executed April 16, 1940, be decreed a "joint mutual and contractual will", that it be decreed Rose B. McKeen accepted the benefits thereunder and "could not revoke the contract" thus made with her husband for payment of the legacy to plaintiff, that said bequest be decreed a charge on the real estate and for specific performance, and judgment to be rendered accordingly. The trial court so decreed and defendants Leslie C. McKeen, as executor and personally, and Dorothy McKeen Carver bring this appeal.

I. Both the trial court here and the probate court in the administration proceedings in the Rose B. McKeen estate held in effect that the instrument of April 16, 1940, was a joint and mutual will and that its provisions for plaintiff became binding upon Rose B. McKeen when she accepted benefits under it after her husband's death. In the light of our Iowa decisions the correctness of those holdings cannot be doubted.

Our decisions establish that in a joint or mutual will for the benefit of the survivor there is "an element of contractual and mutual obligation between the makers" which may become important if there be no revocation by either during the life of the other and if there be provision therein for the benefit of a third party. Baker v. Syfritt, 147 Iowa 49, 55 et seq., 125 N.W. 998; Campbell v. Dunkelberger, 172 Iowa 385, 389–392, 153 N.W. 56; Anderson v. Anderson, 181 Iowa 578, 584–586, 164 N.W. 1042; Maurer v. Johansson, 223 Iowa 1102, 274 N.W. 99; Maloney v. Rose, 224 Iowa 1071, 277 N. W. 572; Child v. Smith, 225 Iowa 1205, 1214, 282 N.W. 316; Culver v. Hess, 234 Iowa 877, 882 et seq., 14 N.W.2d 692; In re Estate of Johnson, 233 Iowa 782, 787, 10 N.W.2d 664, 148 A. L. R. 748; DeJong v. Huyser, 233 Iowa 1315, 1320, 11 N.W.2d 566.

■ ■ Of course, due to factual variations not every decision covers the whole ground. It is held "either party may

revoke during the lifetime of both, provided the other have notice of the intention of revocation." Campbell v. Dunkelberger, supra, at page 389 of 172 Iowa; Anderson v. Anderson, supra. And if in the joint will of a husband and wife there be no provision for any third person it becomes "the will of the first to die, and has no further existence as the will of the survivor." Maurer v. Johansson, supra, at page 1105 of 223 Iowa; Anderson v. Anderson and Maloney v. Rose, both supra; 69 C. J., Wills, section 2711, page 1296.

But if made pursuant to contract between testators, and containing a provision for the benefit of a third person, and the will be still unrevoked when one testator dies, such provision becomes a contract in favor of the third person, binding upon the survivor. Campbell v. Dunkelberger and Child v. Smith, both supra.

"And where the wills are in the same instrument and executed and signed by the parties, it is scarcely possible that this could happen without a previous understanding or agreement between them." Campbell v. Dunkelberger, supra, at page 390 of 172 Iowa; In re Estate of Johnson, supra, 233 Iowa at page 787. See also Maloney v. Rose and Maurer v. Johansson, both supra.

II. The instrument here is clearly mutual and reciprocal as well as joint. The formal opening and closing, and the "First" paragraph (directing payment of debts, expenses, etc.) all in the first person plural, the joint execution, the common witnesses and single attestation clause, together show the common and contractual intention of the testators. The "Second" and "Fifth" paragraphs are exactly reciprocal, while the "Third" and "Fourth", constituting separate provisions of the husband's will, are respectively identical with the "Sixth" and "Seventh" which pertain to the wife's.

We must conclude as was concluded in Campbell v. Dunkelberger, supra: "It is scarcely possible that this could happen without a previous understanding"; or in the language of the In re Estate of Johnson opinion at page 788 of 233 Iowa: "In the case at bar the instrument itself, together with the circumstances attending its execution, clearly establishes that it was made pursuant to a prior agreement between husband and wife."

Nor can it be doubted that the widow, after her husband's death, accepted benefits under his will, consisting of personal property (including some cash) as well as a part of the real estate not held in joint tenancy.

III. Defendants argue that plaintiff, by filing his claim and securing its allowance in the Rose B. McKeen estate, "elected to treat the contract as terminated as to him, and could not later revive the contract and ask for specific performance." Various "propositions" ("A to F", inclusive) are urged in support of this theory.

It is labored that two remedies were open to plaintiff, viz., action for damages for breach of contract or suit for specific performance; that filing of the claim in probate was equivalent to an action for damages (the form being unimportant); and that plaintiff, by such election is now precluded from pursuing a remedy against the land.

The contention ignores the basic proposition upon which the defense of election of remedy rests—the *inconsistency* of alternative remedies. Citation of authority on this proposition hardly seems necessary. Sackett v. Farmers State Bank, 209 Iowa 487, 490, 228 N.W. 51, citing Kearney Milling & Elevator Co. v. Union Pac. R. Co., 97 Iowa 719, 66 N.W. 1059, 59 Am. St. Rep. 434; Hoskin v. West, 226 Iowa 612, 621, 284 N.W. 809. "The doctrine * * * applies only to those cases in which the party has two or more remedies which are inconsistent with each other, and has no application * * * where the remedies * * * are concurrent and consistent." 28 C. J. S., Election of Remedies, section 3b, page 1063; 18 Am. Jur., Election of Remedies, section 11.

In the probate court plaintiff was entitled to have his claim upon the bequest allowed against Mrs. McKeen's estate. This he did by appropriate procedure. Whether it was the equivalent of obtaining a judgment against the executor in an action at law is unimportant.

But he was also entitled, by the terms of the contract, to have it established (in a certain event) as a lien against the land of the joint testators. See subparagraph (4) of paragraphs "Third" and "Sixth" of the will. The allowance of

his claim adjudicated, as against the estate, the terms of the contract and the existence of the facts that made it operative, viz., the acceptance by Mrs. McKeen of benefits under her husband's part of the joint will, and the fact that the personal property of her estate was insufficient to pay the bequest.

The real estate had been conveyed by Mrs. McKeen. It was no longer within the jurisdiction of the probate court and plaintiff was properly relegated by that court to "another proceeding" for the enforcement of his right against the land.

The defendant grandchildren, as beneficiaries, were of course technical parties to the probate proceeding and were undoubtedly bound by the judgment of that court allowing the claim against the estate. It is however at least doubtful if they would have been bound, as present owners of the real estate, by a decree of the probate court adjudicating a lien against their real estate.

But regardless of the question of jurisdiction there was no inconsistency of remedy here. The proceeding in probate established the claim against the estate and revealed there was no personal estate available for its payment. This by no doctrine of election of remedies estopped plaintiff from then maintaining the present suit.

IV. Strenuous objections were urged by defendant to the admission of the testimony by deposition of Vernon F. Kepford, attorney, who drew the joint will in question. It is urged the deposition itself was defective because not signed by the witness, that the testimony was incompetent as an attempt to vary the terms of an unambiguous written instrument and that it was violative of the statute of frauds.

It is unnecessary to discuss these objections. The case is triable here de novo. Whether the trial court considered the Kepford testimony or rejected it under any or all the objections urged cannot be, nor need not be, definitely determined under the record. It is sufficient to say here that its simultaneous execution by the parties and the internal evidence found in the instrument itself furnish ample proof of its contractual character. No oral testimony as to what transpired or was said when it was executed is necessary. "The fact that they made such will is satisfactory proof to our minds that it was done in accordance

with their mutual compact to dispose of their property in this manner." Anderson v. Anderson, supra, 181 Iowa at page 586, 164 N.W. at page 1044, quoting with approval from Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216; 27 L. R. A., N. S., 508, 17 Ann. Cas. 1003; Maurer v. Johansson, supra, 223 Iowa, page 1107, 274 N.W., page 102.

██ ██ V. The fact that a large part of the property was held by testators in joint tenancy does not prevent application of the contractual theory. Undoubtedly joint tenants may contract with each other in respect to the jointly owned property. 48 C. J. S., Joint Tenancy, section 10.

By uniting in the bequest to plaintiff each testator agreed it was to be paid out of the estate of the survivor and that if the personal property of that estate was insufficient it should constitute a charge upon the real estate of the survivor. That the survivor became owner by virtue of the joint tenancy is immaterial so long as she received benefits under the will sufficient to constitute a consideration to support the contract. The legacy was to be paid out of the survivor's estate regardless of the source of the property of such estate.

 VI. After death of Alfonso L. McKeen the contract became irrevocable and binding upon Rose McKeen. She could not thereafter give her property away in defeat of it. We agree with the finding of the trial court that there was no sufficient consideration to support the conveyance of 850 acres of land in Tama County and the Marshalltown residence, subject only to a reservation of a life estate and the assumption of an indebtedness of $13,000. The estimated value of the transferred realty was shown in the Rose B. McKeen estate as $76,500 and in Alfonso L. McKeen's estate as $74,300.

Defendant Dorothy McKeen Carver testifies she and her husband in 1946 borrowed "money to keep the house going or something * * * and had paid grocery bills and utilities and such * * * for my grandmother and my mother, or whoever was taking care of my grandmother at the time." She also says that from November 1946 to June 1947 "we paid as much as we could because there just wasn't anything left after my brother and I took over * * *." She says they did not pay the taxes,

"That was paid out of my grandmother's money * * * but as far as running the house from day to day and month to month bills and expenses, we took care of it."

The grandmother was at that time under voluntary guardianship "because of physical disability." Defendant Leslie C. McKeen was appointed such guardian August 21, 1946. Her petition for the appointment recited that she had "certain farms" in Tama County, "a certain dwelling located at Marshalltown * * * and personal property of value of $4000." There was an order dated August 30, 1946, allowing $150 per month for her support. The guardian's inventory showed household effects, two rent notes of $3600 and $1750 respectively and United States bonds $305.

We have recited these details as bearing on the trial court's finding that the grandchildren were not innocent purchasers for value of their grandmother's real estate and that they took it subject to the provisions of the joint will making plaintiff's legacy a charge on it. That was a part of the contract. We agree with the trial court's conclusion. The relationship of the parties and the lack of any sufficient consideration for a transfer of such magnitude make such finding mandatory.

No conscious or intentional bad faith toward plaintiff needs be imputed to the parties. The nature of Mrs. McKeen's title, its derivation and the possibility of charges against it were of record. These grantees stepped into their grandmother's shoes when they became grantees in the conveyance from her. Their explanation that it was necessary for them to take title in order to get a renewal or a refunding of the mortgage does not show them as innocent purchasers for value. It only means they were willing to assume the indebtedness in order to accept the very substantial equity.

VII. Defendants urge that the trial court erred in denying a continuance on motion filed the morning the trial commenced. We have studied the supporting affidavit and the resistance thereto made immediately by plaintiff. We do not think the trial court abused its judicial discretion or committed any reversible error.

Nor do we find any ground for reversal in the trial court's alleged exclusion "from its consideration the testimony" of de-

1216

fendants "in reference to personal transactions with Rose B. McKeen." The record shows no such testimony of defendant Leslie C. McKeen was even offered. The testimony of defendant Dorothy McKeen Carver was by deposition and we have considered it practically without reference to the objections under the "dead man's statute." The record does not reveal any ruling by the trial court.

What we have said practically covers the various arguments urged in favor of reversal. We deem the trial court's decision sound and should be affirmed. It is so ordered.—Affirmed.

BLISS, C. J., and OLIVER, WENNERSTRUM, MULRONEY, HAYS, THOMPSON, and LARSON, JJ., concur.