**STATE of North Dakota by its TAX COMMISSIONER, Appellant,**

v.

Gabriel P. TUCHSCHERER and Anna M. Gross as Administrator and Administratrix, respectively, Gabriel P. Tuchscherer, Anna M. Gross, Dominick E. Tuchscherer, Katharine M. Tuchscherer, and Regina M. Niegum, Respondents.

No. 8159.

Supreme Court of North Dakota.

Oct. 15, 1964.

---

Helgi Johanneson, Atty. Gen., Joseph R. Maichel, Special Asst. Atty. Gen., Bismarck, for appellant.

Duffy & Haugland, Devils Lake, and A. R. Jongewaard, Rugby, for respondents.

TEIGEN, Judge.

The State of North Dakota, by its Tax Commissioner, has appealed from a judgment of the district court decreeing that the order of the county court correctly fixed the estate tax in the matter of the estate of John D. Tuchscherer, deceased. The respondents are the coadministrators and the heirs at law. A trial de novo has been demanded.

John D. Tuchscherer died intestate on July 23, 1960, a resident of McHenry County, North Dakota. His estate was placed in probate in that county. In the process of the administration of the estate, there was filed for approval an estate tax return. The county judge assessed the tax on April 26, 1961, and forwarded the return with its order to the office of the State Tax Commissioner for approval. The State Tax Commissioner, who has supervision of the enforcement and collection of estate taxes (Section 57–37–19, N.D.C.C.), refused to approve the return. He returned it to the county judge with a letter stating the reason for his refusal and incorporated recommendations for amendment of the return. He stated certain properties held in joint

tenancy should be valued at 100% of their value for tax purposes instead of 50% as shown by the return.

After the first order was entered, there was a refund for overpayment of the Federal tax. The court then entered an order dated August 10, 1961, amending its order determining the estate tax to include the refund for overpayment of the Federal tax and in this order rejected the contentions made by the State Tax Commissioner as follows:

"IT IS FURTHER ORDERED, That as so amended the Court finds that the Order is according to the statutes applicable and that the joint tenancy property has been assessed at fifty percent of its actual value as set forth in Section 57–37–06 of the North Dakota Century Code and that, therefore, no further amendment of said Order be made."

On November 17, 1961, the Tax Commissioner petitioned the county court to review the appraisal made and all issues of law and fact pertaining to assessment of estate tax pursuant to Section 57–37–20, N.D.C.C. A hearing was held on January 12, 1962. The county court dismissed the Tax Commissioner's petition on the grounds and for the reason that the amended order determining the estate tax was entered on August 10, 1961, and had become final as no appeal had been taken therefrom within thirty days. It held the question was res judicata. The court dismissed the petition by order entered on February 14, 1962.

The Tax Commissioner appealed from the order dismissing its petition to the district court. The district court found that the county court's order determining the estate tax was not res judicata. It also held the challenged properties were, in fact, joint tenancy properties includable for estate tax purposes at 50% of their full value and, therefore, the amended order of the county court dated August 10, 1961, correctly fixed the estate tax. Judgment was

entered accordingly and this appeal was taken.

The facts were stipulated and, omitting the formal parts, the salient portions are as follows:

"1. That the decedent, John D. Tuchscherer, furnished the money which went into the several Certificates of Deposit, savings accounts and United States Government bonds listed in the amended inventory in this estate under the heading 'Property held in joint tenancy by decedent and following named person and listed here for estate tax purposes, only.'

[Stipulation contains a listing of the subject properties, purchased in units naming one of the decedent's five children as co-owners in each, showing a total value of $134,000 and 50% value of $67,000.]

"2. That in using the term 'joint tenants' herein, or in saying that the co-tenants did not put any of their own money into these funds, it is not intended to pass upon the legal relationship of the parties, but to indicate the contracts as they are drawn and to refer as to the personal funds of the co-tenants only in the sense that they were not funds derived from whatever relationship existed between the decedent and co-tenant.

"3. That at least four or five years prior to decedent's death decedent turned over to the co-tenants in each case the certificate or other instrument evidencing these several items.

"4. That an oral family agreement was entered into between the decedent and the respondents herein at the time the several instruments were turned over to the respective respondents which provided that the decedent was to receive the interest during his lifetime on the various items which are specified in paragraph 1 of this stipulation. Although the respondents had physical possession of the various instruments and therefore had the legal right to cash them in, the oral agreement provided that this legal right should not be exercised by the respondents unless an emergency arose which necessitated the disregarding of the family agreement and the cashing of these instruments by the respondents in the absence of an emergency necessitating it would be deemed a breach of good faith.

"5. That as no emergency arose necessitating the disregarding of the family agreement the respondents did not exercise the power to cash in these instruments except for purposes of renewal.

"6. That during the ensuing years the decedent generally obtained from each co-tenant the certificates of deposit and savings account books which were necessary for him to have in order to collect interest and renew the certificates of deposit and to collect interest on the savings accounts in the Minot Federal Savings and Loan Association.

"7. That upon collecting the interest on the savings accounts and upon collecting the interest and renewing the certificates of deposit, the renewed certificates of deposit and the savings account books were returned by the decedent to the several co-tenants.

"8. That in several instances a co-tenant actually collected the interest but in each case turned the interest collected over to the decedent or deposited the same to the decedent's account so that the decedent received the benefit of all of this interest collected on these various items during his lifetime pursuant to the family agreement.

"9. That as the interest on these instruments was collected by the decedent or deposited to the decedent's account,

and as pursuant to the oral agreement the decedent was to receive the interest therefrom during his lifetime, the respondents herein did not report any interest from these intangibles on either their state or Federal income tax returns.

\* \* \* \* \* \*

"11. That during the lifetime of the decedent the co-tenants did not place any of their own money into these several deposits nor did they withdraw any of the funds for their own individual use. \* \* \*"

Two issues are presented on this appeal: (1) Is the order of the county court assessing the estate tax res judicata, and (2) Is the order of the county court assessing said tax in error?

We will consider the second issue first because, if the county court was correct in its determination that the value of the decedent's interest for estate tax purposes was 50% of the value of the property, it would serve no purpose to review the question of whether or not the county court's order is res judicata.

Thus, the first question is whether the government bonds, savings accounts, and certificates of deposit, purchased by the deceased with his money and made payable to himself and a child as joint tenants and payable to either or the survivor, are taxable for estate tax purposes at 50% or 100% of their value, where possession was given the child but an oral agreement was entered into whereby the child agreed not to cash the instruments during the lifetime of the father unless an emergency arose and the further agreement that the father was to receive the interest earned by these investments during his lifetime.

The Tax Commissioner relies on Section 57–37–02(3), N.D.C.C., which defines a gross estate of a resident decedent for estate tax purposes to include intangible personal property wherever located; Section 57–37–04, which provides that the gross estate of all decedents shall also include property transferred in contemplation of death and property transferred prior to death intended to take effect in possession or enjoyment either at or after death; and Section 57–37–08, N.D.C.C., which includes in the gross estate, for estate tax purposes, the value of revocable and irrevocable trusts whenever a donor reserves a life income therefrom. He argues that Section 57–37–06, N.D.C.C., providing that the gross estate shall include the value of jointly held properties payable to either or the survivor and shall be valued for estate tax purposes by dividing the value of the entire property by the number of joint tenants, does not apply in this case.

According to the Tax Commissioner's interpretation of the stipulated facts, the decedent did not intend to create joint tenancies but it was his intention to make gifts of the properties to the various respondents and thereby vest legal title in them, subject to the reservation of the right of the decedent to receive the interest or income from these accounts, deposits, and bonds until his death; and that, because of the oral agreement, the properties are properly classified under one of the other sections of the Code referred to above and, therefore, are taxable at 100% of their value.

The Tax Commissioner admits that joint tenants may contract with each other concerning the use of the joint property. However the facts in this case, he argues, establishes the deceased reserved unto himself the income as a condition attached to a gift and the children did not contract with the deceased. Therefore, he argues, the income was not received by contract but by way of reservation. The deceased also extracted promises from the children that the income belonged solely to the decedent, which is established by the fact that the deceased reported the interest received as income for State and Federal income tax purposes and the children did not. This fact, he argues, further illustrates that the parties themselves did not treat the transaction as creating joint tenancy interest.

For the reasons aforesaid, the Tax Commissioner argues the accounts, deposits, and bonds should be classified in one of the three following categories: (1) As a trust under Section 57–37–08 by reason of the reservation of income for life; or (2) As a tenancy in common with right of survivorship, in which case one-half thereof would be included as intangible personal property owned by the decedent at death pursuant to Section 57–37–02(3), and the other one-half interest would be included as a transfer by decedent prior to death to take effect in possession or enjoyment after death pursuant to Section 57–37–04(2); or (3) As a transfer by decedent prior to death as a gift without an equivalent monetary consideration intended to take effect in possession or enjoyment after death under Section 57–37–04(2).

He also argues that if the court finds a joint tenancy exists, the properties would still be 100% taxable—one-half under Section 57–37–06 as joint interest property—and, as the decedent reserved the income from the other one-half until his death, it also would be taxable under Section 57–37–04(2) as a transfer by gift to take effect in enjoyment after his death.

The Tax Commissioner advises that this is the administrative interpretation given these laws by his office for the past eight years and, therefore, constitutes a long-standing administrative interpretation of the law. He argues that the realities of the taxpayer's economic interest, rather than the niceties of the conveyancer's art, should determine the power to tax and whether a particular interest is subject to the tax.

Section 57–37–06, N.D.C.C., as it existed when the decedent died, is applicable here. It reads as follows:

"Joint interest.—The gross estate of a decedent shall include the value of interests in property held as a joint tenant, or deposited in banks or other institutions in the joint names of the decedent and any other person, and payable to either or the survivor. In any such case the value of the decedent's interest shall be determined by dividing the value of the entire property by the number of joint tenants, joint depositors, or persons interested therein."

The Tax Commissioner argues that this section states the method of taxing joint tenancy interests only when the joint tenancy interests are not created in contemplation of death, or are not intended to take effect in possession or enjoyment at or after death.

The Tax Commissioner does not challenge the right to place property in joint tenancy or to contract or make gifts of income derived from joint tenancy property, nor does he dispute the respondents' legal rights to the ownership of the property which they received by way of gift or contract from the decedent. In other words, the Tax Commissioner does not dispute the fact that this is, in fact, joint tenancy property as between the co-owners. He does not challenge the right of the individual respondents herein to succeed by contract to the whole of the property upon decedent's death. He does not contend the subject properties are a part of the assets of the estate subject to probate.

The Legislature enacted the "Estate Tax Act" by Chapter 267 of the Session Laws in the year 1927. Prior thereto we had an inheritance tax. The Estate Tax Act imposes a tax upon the transfer of the net estate of every decedent, whether in trust or otherwise, under the conditions and subject to the exemptions and limitations imposed by the Act. It is now codified as, Chapter 57–37 of the North Dakota Century Code. Although the original Estate Tax Act was amended and re-enacted by Chapter 282 of the Session Laws of 1931, and again by Chapter 251 of the Session Laws of 1933, the sections cited by the Tax Commissioner have remained the same, except that from the period 1931 to the re-enactment in 1933 intangible personal property was omitted from the gross estate.

■ The estate or transfer tax is a creature of the Legislature and our statutes are the only authority for it. It is an excise imposed upon the transfer of or shifting in relationship to property at death. In re Ryan's Estate, N.D., 102 N.W.2d 9.

■ The Tax Commissioner argues that the stipulated facts establish there was a reservation of the earnings and, consequently, the respondents did not contract or assign the income from the properties to the deceased. However, it does not appear to us, either from the stipulation of the facts or the exhibits introduced in evidence, that a reservation was made. The bonds, certificates of deposit, and savings bonds were made to parties as joint tenants with the right of survivorship and are regular in form. They contain no reservation. This is admitted. They were delivered to the co-owners, who are the respondents herein. The deceased, who purchased these properties with his money, desired to have the income therefrom as long as he lived. In order to accomplish this, he secured an oral agreement from the co-owners to this effect and a further agreement that they would not cash the property except in case of an emergency. This agreement, to be effective, had to be acquiesced in by the co-owner respondents. It was, therefore, not a reservation but an agreement or contract. It appears settled that joint tenants may contract with each other regarding income to be derived from jointly held property without thereby terminating the joint tenancy. Hammond v. McArthur, 30 Cal.2d 512, 183 P.2d 1; Gillette v. Nicolls, 121 Cal.App.2d 185, 262 P.2d 856; Teutenberg v. Schiller, 138 Cal.App.2d 18, 291 P.2d 53; Urbancich v. Jersin, 123 Colo. 88, 226 P.2d 316; Jennings v. McKeen, 245 Iowa 1206, 65 N.W.2d 207; Tindall v. Yeats, 392 Ill. 502, 64 N.E.2d 903; Duncan v. Suhy, 378 Ill. 104, 37 N.E.2d 826; Cole v. Cole, 139 Cal.App.2d 691, 294 P.2d 494; 48 C.J.S. Joint Tenancy § 10, p. 933; 14 Am.Jur., Cotenancy (Pocket Parts), Sec. 14; 64 A.L.R.2d 947.

We find the government bonds, the certificates of deposit, and the savings accounts described in the stipulation are joint interest properties described in Section 57-37-06, N.D.C.C. They were all held by the decedent and the respective co-owners as joint tenants or were deposits in banks or other institutions, and all were in the joint names of the decedent and the respective co-owner respondents and were made payable to either or the survivor. Because they come within the definition of Section 57-37-06, supra, they must be included in the gross estate of the decedent to the extent of the value of the interest in the property held by him as a joint tenant by dividing the value of the entire property by the number of joint tenants, joint depositors, or persons interested therein, which in this case in each instance is 50%.

■ The surviving co-owners possessed the right or privilege of cashing or realizing upon the properties during the lifetime of the decedent. They had possession. Possession was delivered to them by the decedent. They could have terminated the agreement which they made that the decedent receive the earnings of the properties whenever they, within their judgment, found it necessary. They could have done this without the consent or acquiescence of the decedent.

However, even if we held there was a reservation, it still would not have the effect of postponement of enjoyment of the properties until or after the death of the decedent.

"The retention by a donor of the right to collect and use income, interest, or revenue of property has an important bearing on the question whether there is such a surrender of dominion by the donor as to rob the transaction of its character as a gift. While many courts hold that under particular circumstances, the reservation of the right to income for life does not defeat the gift, yet if other factors bearing against a gift are of sufficient weight, such reservation may well be the deciding argument to defeat the gift. Thus, it has been held that a donor's reservation of right to dividends during his life

does not destroy the validity of a gift inter vivos of corporate stock. Similarly, it has been held that the prima facie showing of delivery by transfer on the corporate books and the issuance of stock certificates in the name of the donee are not overcome by the fact that the donor has reserved the right to collect dividends thereon for life. Likewise, an arrangement that a donor shall receive the interest from notes and deeds of trust for a certain time after the delivery thereof to the donees does not change the nature of a transaction from that of a gift; and the fact that a donor on delivering a bond and mortgage to the donee as a gift says all that he wants is the interest during his life does not destroy the effect of the gift of the principal." 24 Am.Jur., Gifts, Sec. 29. See also 38 C.J.S. Gifts § 52; 63 A.L.R.2d 289.

" 'Gift' defined.—A gift is a transfer of personal property made voluntarily and without consideration." Section 47–11–06, N.D.C.C.

They were gifts inter vivos and could not be revoked by the deceased. Section 47–11–08, N.D.C.C.

Any person owning an interest in tangible or intangible personal property may grant, transfer, sell and convey the same to himself and any other person or persons in joint tenancy with the right of survivorship without the necessity of any intermediate transfer. Section 47–11–14, N.D.C.C. This statute became effective in 1957. A companion statute was also adopted validating transfers made before the effective date of Section 47–11–14, supra. Section 47–11–15, N.D.C.C.

Our Legislature, by the enactment of the Estate Tax Act in 1927, classified jointly held properties with the right of survivorship as a separate and distinct class of property subject to the estate tax and provided the method by which the value of decedent's interest shall be determined for estate tax purposes. Where property comes within the definition of a class of property established by a legislative enactment, this court will not by judicial fiat place such property into another classification. The statute makes no exception. The Legislature has by clear language excepted the property from the other classifications, specifically classifying it as joint interest property under Section 57–37–06, supra. The Legislature has the power to classify property for estate tax purposes. 28 Am. Jur., Inheritance, Estate, and Gift Taxes, Sec. 30; 84 C.J.S. Taxation § 23. The fact that the decedent paid income taxes on the interest received and the respondents did not has no weight in determining intent as to the character of the property which earned the income under the agreement stipulated as facts in this case and the statute defining joint interests.

We hold, therefore, that the property in question in this action cannot be classified as intangible personal property under Section 57–37–02(3), nor as property transferred by decedent prior to death to take effect in possession or enjoyment after death pursuant to Section 57–37–04(2), nor as a trust under Section 57–37–08. The legislative intent is clear and must be given effect. State ex rel. Erickson v. Burr, 16 N.D. 581, 113 N.W. 705; Goldberg v. Gray (3 cases), 70 N.D. 663, 671, and 672, 297 N.W. 124, 127, and 128.

The Tax Commissioner argues that the administrative interpretation is contrary to our holding in this case. However, we have said several times that practical construction of a statute by the executive officers, whose duty it is to administer an Act, is entitled to some weight in construing doubtful statutes. However, it may not be permitted to contradict the plain terms of a statute or an Act. State v. Stockwell, 23 N.D. 70, 134 N.W. 767; In re Black's Estate, 74 N.D. 446, 23 N.W.2d 35.

For the reasons aforesaid, the judgment of the district court is affirmed.

MORRIS, C. J., and STRUTZ, BURKE, and ERICKSTAD, JJ., concur.