UNITED STATES of America, Appellant,

v.

LaRue FORD, as Executrix of the Estate of P. Robert Ford, Deceased, Appellee.

No. 18293.

United States Court of Appeals
Eighth Circuit.

May 23, 1967.

Benjamin M. Parker, Atty., Dept. of Justice, Washington, D. C., for appellant. Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, were on the brief, together with Donald E. O'Brien, U. S. Atty., Sioux City, Iowa.

William W. Crissman, Cedar Rapids, Iowa, for appellee.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

The representative of the estate of P. Robert Ford, deceased, instituted this action for refund of additional federal estate tax paid when the marital deduction, claimed on the return as filed for certain properties under § 2056 of the Internal Revenue Code of 1954, 26 U.S.C. § 2056, was disallowed on audit. Tax of $4,395.49, plus interest, is in issue.

The facts are stipulated. Cross-motions for summary judgment were made. Judge McManus decided the case against the government, 66–1 USTC par. 12,372, and it appeals.

The decedent died December 5, 1961. His wife, LaRue Ford, survived him. They resided in Cedar Rapids, Iowa. The only properties in question, as they existed at Mr. Ford's death, were (a) a balance in an Iowa checking account in the joint names of the decedent and his wife; (b) the Fords' Cedar Rapids home acquired and held of record by them as joint tenants with right of survivorship;[1] and (c) insurance on Mr. Ford's life payable in a lump sum to Mrs. Ford as the named surviving beneficiary.

What would seem to be the obvious marital deduction character of these three properties under § 2056(a) and (e) (5) and (7) is destroyed, the government claims, by a "Joint and Mutual Last Will and Testament" which Mr. and Mrs. Ford executed on August 29, 1958. We therefore examine that instrument in some detail.

This will recites that each of the spouses made it "for and in consideration of the agreements of the other herein contained, and of the execution hereof by the other". Its declared purpose was to preserve the Fords' property for their descendants as against any subsequent spouse.

The will states that upon the death of the first to die "we hereby will" the residue "of our property", including the proceeds of insurance payable to the survivor and property owned jointly, to the survivor for life with power to sell and use as the survivor "in his or her sole discretion may deem necessary to provide only for his or her" support. The survivor otherwise "agrees" that his property, including insurance proceeds and that acquired as surviving joint tenant, "shall be held in trust" for residuary beneficiaries; that he will not dispose of the property by gift or insurance designation to anyone other than children or grandchildren of the two testators; and that the interests "of the survivor in such property shall become limited, cut down and reduced to a life estate only, with the powers of disposition and use hereinabove granted". The will goes on to provide that, upon the death of the survivor, the property is devised and bequeathed to two daughters, or their descendants, in equal shares per stirpes, with a trust to come into being for their benefit in the event of certain contingencies. If lineal descendants die out before distribution, sisters of Mr. Ford are the ultimate beneficiaries.

The will states:

"We hereby declare and agree that all property of every kind and nature now or hereafter owned by us while we are both living, whether the legal title thereto is held jointly or in severalty, and including the proceeds of insurance and annuity contracts payable on the death of either of us to the other, is owned by us jointly and for the use and benefit of us both and comprises our common estates."

It recites that provisions for the survivor are in lieu of dower and similar interests,

---

1. The stipulation is silent as to whether Mr. Ford or Mrs. Ford was the source of the jointly held property. In the absence of proof we must assume, adversely to the estate, that the property is attributable in its entirety to the decedent, and not at all to the survivor, and thus is includable in Mr. Ford's gross estate, 26 U.S.C. § 2040; Estate Tax Regs. § 20.2040–1(a) (2); Tuck v. United States, 282 F.2d 405, 409–410 (9 Cir. 1960); English v. United States, 270 F. 2d 876, 879–880 (7 Cir. 1959). It was so included in the return as filed. The estate does not claim that the property is excludable; it only asserts marital deductibility.

and that each agrees that the will "shall not be revoked or changed except while both of us are living and then only by the joint action of both of us". The will was not thereafter revoked or changed.

After Mr. Ford's death the instrument was admitted to probate in Linn County, Iowa, as his will.

Judge McManus, in brief findings and conclusions, held that the joint property and the insurance proceeds qualified for the marital deduction under § 2056 and upon the authority of this court's decision in Estate of Awtry v. Commissioner of Internal Revenue, 221 F.2d 749 (8 Cir. 1955).

One must concede that the *Awtry* case is close on its facts to this one. The Awtrys, too, were Iowa residents and had executed what they called a "joint and mutual" will. Their instrument declared, "Whatever property we own * * we jointly own whether or not so recorded, and we have agreed and do hereby agree that the survivor of us shall have the full use and income and control of all our property so long as the survivor of us shall live".

Mr. Awtry died July 31, 1950. He was survived by his wife. The instrument was admitted to probate as the decedent's will. At his death there were savings bonds registered jointly in the names of the two testators, a joint account in an Iowa bank, and Iowa real estate acquired and held of record by them as joint tenants and not as tenants in common.

This court, in an opinion by Judge Van Oosterhout, held (a) that the effect which the will and the various instruments creating the joint titles "have upon passing title to the property in controversy must be determined by the Iowa law" which "creates the legal interests and rights"; [2] (b) that (citing Iowa cases) "Joint tenancies in real and personal property

have long been recognized and enforced by the Iowa courts"; [3] (c) that "[i]t appears to be clear under the Iowa law that the surviving co-owner of Government bonds becomes the absolute owner thereof"; (d) that Mrs. Awtry "received complete and absolute fee simple title to the joint tenancy real estate, the joint bank deposits, and the jointly-held Government bonds by virtue of the deeds and contracts creating such joint tenancies"; (e) that the decedent's will did not operate on the joint tenancy properties "and this is true even if it be conceded that the will by its terms was broad enough to include the joint tenancy property"; (f) that while there may be contractual obligations imposed under a joint and mutual will upon the survivor, there is nothing in such a will "which precludes the operation of the usual rules relating to joint tenancies"; (g) that separate probate upon the death of each testator is required and "Each will passes the property owned by each testator at the time of his death"; (h) that the contractual restrictions urged by the Commissioner "were not imposed by Mr. Awtry in connection with the creation of the various joint tenancies"; and (i) that there is nothing in the Code definitions "which requires us to hold that a restriction voluntarily placed by a beneficiary upon her own property turns an absolute interest into a terminable one". Accordingly,

"We conclude that Mrs. Awtry acquired absolute title to the joint tenancy property through the joint tenancy contracts, that the will as a testamentary instrument in no way affects the title to the joint tenancy property, and that the joint tenancy property did not by reason of anything done by Mr. Awtry pass to others than his surviving spouse."

Pp. 753, 755-757 and 759-760 of 221. F.2d.

2. See also Estate of Peyton v. Commissioner of Internal Revenue, 323 F.2d 438, 442 (8 Cir. 1963); Poage v. Phillips, 202 F.Supp. 267, 269 (S.D.Iowa 1961); Nettz v. Phillips, 202 F.Supp. 270, 271 (S.D. Iowa 1961).

3. See, also, Hyland v. Standiford, 253 Iowa 294, 111 N.W.2d 260, 264 (1961).

Both *Awtry* and the present case concern Iowa real estate acquired and held of record by spouses as joint tenants with right of survivorship, and an Iowa bank account held in their joint names. Although *Awtry* also involved co-ownership government bonds and the present case does not, and although the present case involves lump sum life insurance proceeds and *Awtry* did not, these are minor factual differences obviously of no import here.[4] *Awtry* therefore would appear to control the present case unless Iowa law has changed in the intervening 12 years or unless there are differences in the wills which occasion opposing estate tax consequences.

The government does indeed assert that there are "controlling differences" between the Awtry will and the Ford will. Specifically, it says that the Awtry instrument "merely reflects an understanding of a husband and wife, which was not binding on either of them"; that in *Awtry* "it is plain that there was not * * * any severance of their joint properties"; that the Awtry will was revocable while both spouses were living and even after the death of the first to die; that neither spouse was obligated to take under the Awtry will; that it was mandatory to probate that will, whereas the Fords intended that their interests pass without probate; and that the Awtry will did not limit the disposition of each spouse of his own property.

The government also suggests that Iowa law has been clarified in the interim and that Iowa decisions since 1955 demand a result in its favor here.

We may accept for present purposes— for the estate does not really contend otherwise—the government's arguments (which we supplement by some citations of our own) that:

■ 1. In Iowa, as generally elsewhere, a joint tenancy may be severed by agreement or by appropriate action of either tenant. See Wood v. Logue, 167 Iowa 436, 149 N.W. 613, 615 (1914); In re Baker's Estate, 247 Iowa 1380, 78 N.W.2d 863, 867, 64 A.L.R.2d 902 (1956).

■ 2. The Iowa court, since *Awtry*, has clearly defined the words "joint", "reciprocal", and "mutual", as applied to wills, and has sought thereby to eliminate what it felt was preexisting confusion. A will is joint when it "is nothing more than a single documentary instrument constituting the wills of two or more persons, jointly executed". Wills are reciprocal when "two or more testators make testamentary dispositions in favor of each other"; this may be done by one will "in which case the will is both joint and reciprocal". A will is mutual "only if it is executed pursuant to an agreement", that is, "only when there is evidence sufficient to show a binding agreement as to disposal of the property of the makers in a certain way". Father Flanagan's Boys' Home v. Turpin, 252 Iowa 603, 106 N.W.2d 637, 639–640 (1960); Tiemann v. Kampmeier, 252 Iowa 587, 107 N.W.2d 689, 691 (1961).[5]

■ 3. Recent Iowa decisions require that there be more than the mere execution of reciprocal wills by spouses in order to establish the agreement which mutuality requires. Allinson v. Horn, 249 Iowa 1351, 92 N.W.2d 645, 648 (1958); Powers v. Perry, Iowa, 144 N.W. 2d 402, 403 (1966). "The proof may be by extrinsic evidence or it may appear on the face of the wills, or both". Vilter v. Myers, 255 Iowa 818, 123 N.W.2d 334, 337 (1963); In re Logan's Estate,

---

4. Estate of Gust Marion Peterson, 23 T.C. 1020 (1955), concerned a mutual Nebraska will and, among other things, lump-sum proceeds of life insurance policies. The Tax Court's denial of the marital deduction was reversed by this court without opinion a few months after our decision in *Awtry*. Estate of Peterson v. Commissioner of Internal Revenue, 229 F.2d 741 (8 Cir. 1955).

5. Note Levis v. Hammond, 251 Iowa 567, 100 N.W.2d 638 (1960); Youngberg v. Holstrom, 252 Iowa 815, 108 N.W.2d 498 (1961).

253 Iowa 1211, 115 N.W.2d 701, 705 (1962). "The question then becomes one of fact: is there clear and satisfactory evidence of a contract apart from the execution of the joint will itself? Do the facts and proper inferences show an intent to make a binding agreement?" Father Flanagan's Boys' Home v. Turpin, supra, pp. 640–641 of 106 N.W.2d.[6]

4. The Ford will is contractual. Even its language expressly so states.[7]

The government goes further, however, and, over the estate's opposition, urges that the Fords' execution of the will in August 1958, effected a conversion of all their interests in properties into "common estates" and thus "abrogated all rights of survivorship and rights of absolute ownership", reduced their rights as survivors in property remaining at the death of the first to die, and established and fixed the rights of third parties in property remaining at the death of the survivor. Emphasis is placed on the will's recitals that the spouses agree that all property owned by them while both are living, even including insurance proceeds. and property held jointly, "is owned by us jointly and for the use and benefit of us both and comprises our common estates"; that its provisions are in lieu of dower; that the survivor agrees to take under the will; that the rights of the survivor "shall become limited, cut down and reduced to a life estate only", with certain powers of disposition and use; and that the will is not to be revoked or changed except during the testators' joint lives and by their joint action. Thus, it is said, the Fords, after the execution of their will, held several interests in their properties and that which passed

from Mr. Ford to Mrs. Ford at his death was only a life interest with a limited right to invade corpus. This being so, the interest was a non-deductible terminable one, within the meaning of 26 U.S.C. § 2056(b).

The result urged by the government will follow if its premise is sound. But we disagree with the premise and thus do not arrive at the result.

We may assume, as we have indicated above, that the Fords' will is mutual in the sense of being contractual. It does not follow, however, that its contractual aspects served, at the will's execution, to change or transform the nature of the property interests Mr. and Mrs. Ford theretofore possessed. The home, held in joint tenancy, remained in joint tenancy. The bank account remained joint and the insurance remained payable in a lump sum to Mrs. Ford as beneficiary. What happened by the will-contract was that Mr. and Mrs. Ford obligated themselves to handle and devolve property, through and at their respective deaths, in accord with the plan of the will. Some rights of third parties may have come into being under the contract and, in the event of breach, relief to those third parties may have been available. Yet what passed to Mrs. Ford upon her husband's death in the home, the bank account and the insurance, passed to her by the nature of the joint holdings and the insurance designation and not under the will or pursuant to any contractual provision in the will. She may have obligated herself in specified ways as survivor but this did not reduce or affect her own full survivorship rights in the insurance and jointly held property. The contractual

6. The Iowa Probate Code, Acts 1963 (60 G.A.) ch. 326, effective January 1, 1964, Iowa Stat.Ann. § 633.2, subd. 1, now provides, § 633.270, "No will shall be construed to be contractual or mutual, unless in such will the testator shall expressly state his intent that such will shall be so construed". Note Floerchinger v. Williams, Iowa, 148 N.W.2d 410 (1967).

7. There are suggestions in the Iowa cases that a mutual will may be revoked by one of the testators while both are living, at least upon notice to the other. See, for example, Jennings v. McKeen, 245 Iowa 1206, 65 N.W.2d 207, 209 (1954). But no change in the Ford will was made or attempted after its execution. We therefore need not determine whether the suggestion as to revocability is correct when, as with the Ford will, the parties have agreed not to revoke except by joint action.

aspects of the will did not reduce the joint tenancy holdings and the insurance designation into something less or something different.

The intent of the testators is, we think, clearly to this effect and is apparent from the very language of their will. The instrument's preamble speaks of property "owned jointly or in severalty". Item Two refers to "all joint property acquired by the survivor as surviving joint tenant", language which contemplates joint tenancy survivorship, and to "the proceeds of all insurance * * * payable on the death of the one of us first to die to the survivor". And Item Five refers to property "now or hereafter owned by us while we are both living". All these are words of the future and, for us, carry no implication that the will serves or was intended to serve as an instrument which forthwith changed the nature of existing joint interests and insurance designations. The flow of those interests at the death of the first testator, as a joint tenant and insured, followed the usual course. And we are not persuaded by the use of the words "common estates" in the Fords' will. We feel the government would read too much into that phrase. Its plural form is at least indicative. We regard the term here as one not of legal art and as one not destructive of but as consistent with continued ownership of the kind theretofore existing.

We hesitate to read into the Fords' actions any property consequences which they did not see fit to recite in their will in specific and positive language and which were not necessary anyway to accomplish the ultimate result they obviously intended. The joint and mutual will effected what they wanted without the conversion of existing property interests of one type into interests of another type.

We thought that all this was fairly clear from what was said in the *Awtry* opinion:

"We conclude that so far as the involved joint tenancy properties are con-

cerned there was nothing for Mr. Awtry's will to operate upon, and this is true even if it be conceded that the will by its terms was broad enough to include the joint tenancy property. * * * Liability in the *Jennings* case [Jennings v. McKeen, 245 Iowa 1206, 65 N.W.2d 207 (1954)] is predicated upon the obligation of the survivor to fulfill her contractual obligation. There is nothing in the opinion to indicate that there is anything about a joint and mutual will which precludes the operation of the usual rules relating to joint tenancies. * * * It appears to us that there was nothing which Mr. Awtry by his will as a testamentary instrument could do to affect the complete title in the joint tenancy property which had passed to Mrs. Awtry by survivorship. * * * The contractual restrictions now relied upon by the Commissioner were not imposed by Mr. Awtry in connection with the creation of the various joint tenancies. * * * There is nothing in such definitions [of the Code] which requires us to hold that a restriction voluntarily placed by a beneficiary upon her own property turns an absolute interest into a terminable one." Pp. 756–757 and 759–760 of 221 F.2d.

Of course, there are factual differences between the Awtry will and the Ford will. This is to be expected. The Iowa court has observed that seldom are two wills exactly alike. Brown v. Brown, 213 Iowa 998, 240 N.W. 910, 911 (1932); Starr v. Newman, 225 Iowa 901, 281 N.W. 830, 832 (1938). But we are not persuaded that these differences are significant so far as property consequences and estate tax results are concerned. In *Awtry* we definitely recognized the contractual implications of a mutual will. Even though the government now claims that the Awtry will was not contractual and expressed nothing more than a nonbinding understanding between a husband and wife, we feel that our opinion in *Awtry* reflects our recognition of contractual aspects. See pp. 757–758 of 221 F.2d.

In our view *Autry* is a controlling precedent here.

It is arguable, of course, as the government has argued, that the making of a mutual will may result in the severance of a joint tenancy. We note, however, that the Iowa court has not passed upon that issue and specifically refused to do so in Tiemann v. Kampmeier, supra, p. 692 of 107 N.W.2d. That refusal does not prompt us to draw any inference that, if the court had met the issue, it would have ruled that severance ensued.

Although a sharply divided court, in In re Baker's Estate, supra, 247 Iowa 1380, 78 N.W.2d 863, 64 A.L.R.2d 902 (1956), held that severance of a joint tenancy was effected by the execution by joint tenants of a contract for sale of their real estate, because of the equitable conversion of the realty into personalty, we are not prepared to say, upon the authority of that case, that the Iowa court would hold that the same result ensues upon the execution by joint tenants of a joint and mutual will. The court's reference to a law review note and the authorities which that note cites, see p. 867 of 78 N.W.2d, does not, upon our reading, amount to an acceptance of any such legal principle and is not, we feel, of persuasive significance here. Compare Berry v. Berry's Estate, 168 Kan. 253, 212 P.2d 283 (1949); but see United States v. Spicer, 332 F.2d 750 (10 Cir. 1964). We note that the Iowa court later refused, without dissent, to extend the result in *Baker* to an encumbrance situation. Hyland v. Standiford, 253 Iowa 294, 111 N.W.2d 260, 266 (1961).

■ We hold that *Awtry* does control this case; that the interests which at Mr. Ford's death passed from him to Mrs. Ford in the home, the bank account, and the insurance came to her by virtue of the type of holding and not by virtue of the will's provisions; that her obligations with respect to these properties after her husband's death rested upon her only because of the contractual provisions of the will and not by the nature of interests passing to her from her husband upon his death; that the interests so passing were not nondeductible terminable interests; and that they were entitled to the marital deduction.

Affirmed.