# KEYSTONE MANGANESE AND IRON COMPANY *v.* MARTIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 51. Argued and submitted November 1, 1889. — Decided November 11, 1889.

A bill in equity prayed for an injunction restraining the defendant from trespassing on the land of the plaintiff and taking mineral and ore therefrom, and that he account to the plaintiff for the value of the ore already taken therefrom. After a hearing on pleadings and proofs, the Circuit Court made a decree granting a perpetual injunction, and ordering an account before a master: *Held*, that the decree was not final or appealable.

IN EQUITY. The case is stated in the opinion.

*Mr. U. M. Rose* and *Mr. G. B. Rose*, for appellant, submitted on their brief.

*Mr. G. N. Tillman* for appellee. *Mr. J. M. Moore* filed a brief for same.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Eastern District of Arkansas, by Matt Martin against The Keystone Manganese and Iron Company.

The bill alleges that the plaintiff, owning a piece of land in Independence County, Arkansas, conveyed it, in June, 1853, with other lands, to one Smith and his heirs forever, subject to the condition that Martin retained to his heirs, representatives and assigns " a perpetual and unlimited right in fee to all the stones and minerals that may be in or upon said lands, and full and unquestioned power and right to enter said lands for the purpose of digging, quarrying and mining upon said lands, with full power and right of ingress and egress thereto and therefrom, and upon said lands to remain and erect buildings thereon, and to use such timber and other materials as may be convenient and proper for the excavation, preserva-

tion, manufacture and removal of such stones and minerals and improvements as may be connected with the working of said stones and minerals, it being well understood by the parties hereto that the right of sale. and all else is hereby conveyed to said Thomas C. Smith, except the right to the stones and minerals on said lands, which, with all needful and proper rights and privileges to obtain, prepare for market and remove the same, are expressly reserved from sale." The deed was executed by Martin alone.

The bill further alleges that ever since said deed the plaintiff has been and now is in the possession of the mineral and ore in and upon the land; that there are large and valuable deposits of manganese therein; and that the defendant, in December, 1885, unlawfully entered upon said mineral deposits and began to mine and remove therefrom the manganese, and had carried it away, to the value of more than $5000. It prays for an injunction restraining the defendant from the commission of further trespasses during the pendency of the suit; that an account be had of the quantity and value of the ore taken by the defendant from the land; and that it be decreed to account to the plaintiff therefor, and be perpetually enjoined from further trespassing upon the mineral and ore in the land.

The defendant put in an answer, setting up its right to mine and remove the manganese ore by virtue of its having obtained such right, for a specified period of time, from persons who had become the owners of the land through a sale of it for the non-payment of taxes, and also setting up a statute of limitation.

After a replication, proofs were taken on both sides, and the Circuit Court decided in favor of the plaintiff upon the ground that, under the laws of Arkansas in force at the time the taxes were assessed, for the non-payment of which the land was sold, it was necessary that the mine, having been separated from the surface soil, should be separately assessed, and it could not be sold for taxes, except upon such an assessment; and that neither the mine, nor the mineral in it, was, in the present case, assessed or sold. The court made a decree

perpetually enjoining the defendant from entering upon or removing the mineral or any part thereof from the land, and further ordering that an account be taken of the quantity and value of the mineral and ore already removed by the defendant from the land, and that the defendant account to the plaintiff for its value, and appointing a master to take said account and to hear evidence and report the same to the court. From that decree the defendant has appealed to this court, and the case has been argued by the appellee on its merits, and submitted on a printed brief by the appellant.

We think that the decree is not a final decree, and that this court has no jurisdiction of the appeal. The decree is not final, because it does not dispose of the entire controversy between the parties. The bill prays only for an injunction and an account of the quantity and value of the ore taken from the land by the defendant. The injunction is granted, but the account remains to be taken. The case is not one where nothing remains to be done by the court below except to execute ministerially its decree. In all cases like the one before us this court has uniformly held that the decree was not final and was not appealable.

The principal cases in which it has held that the decree was not appealable, because not final, are the following: *The Palmyra*, 10 Wheat. 502; *Perkins* v. *Fourniquet*, 6 How. 206; *Pulliam* v. *Christian*, 6 How. 209; *Barnard* v. *Gibson*, 7 How. 650; *Craighead* v. *Wilson*, 18 How. 199; *Beebe* v. *Russell*, 19 How. 283; *Humiston* v. *Stainthorp*, 2 Wall. 106; *Railroad Co.* v. *Swasey*, 23 Wall. 405; *Bostwick* v. *Brinkerhoff*, 106 U. S. 3; *Grant* v. *Phœnix Ins. Co.*, 106 U. S. 429; *Dainese* v. *Kendall*, 119 U. S. 53; *Parsons* v. *Robinson*, 122 U. S. 112; while the decree has been held final, for the purposes of an appeal, in *Ray* v. *Law*, 3 Cranch, 179; *Whiting* v. *Bank of the United States*, 13 Pet. 6; *Forgay* v. *Conrad*, 6 How. 201; *Bronson* v. *Railroad Co.*, 2 Black, 528; *St. Louis Iron Mt. &c. Railroad* v. *Southern Express Co.*, 108 U. S. 24; *Ex parte Norton*, 108 U. S. 237; *Winthrop Iron Co.* v. *Meeker*, 109 U. S. 180.

In *The Palmyra*, a prize case, the captors had filed a libel in

the District Court, and that court had dismissed it, without costs and damages against the captors. The Circuit Court affirmed the decree of restitution, with costs and damages. The libellants having appealed to this court, the appeal was dismissed, on the ground that the decree of the Circuit Court was not final, Chief Justice Marshall saying : " The damages remain undisposed of, and an appeal may still lie upon that part of the decree awarding damages. The whole cause is not, therefore, finally determined in the Circuit Court ; and we are of opinion that the cause cannot be divided so as to bring up successively distinct parts of it."

In *Perkins* v. *Fourniquet*, the Circuit Court decreed that the plaintiffs were entitled to two-sevenths of certain property, and referred the matter to a master to take and report an account of it, and reserved all other matters in controversy until the coming in of the master's report. It was held that that was not an appealable decree, Chief Justice Taney saying: " The appellant is not injured by denying him an appeal in this stage of the proceedings; because these interlocutory orders and decrees remain under the control of the Circuit Court, and subject to their revision, until the master's report comes in and is finally acted upon by the court, and the whole of the matters in controversy between the parties disposed of by a final decree. And, upon an appeal from that decree, every matter in dispute will be open to the parties in this court, and may all be heard and decided at the same time."

In *Pulliam* v. *Christian*, a decree of the Circuit Court set aside a deed made by a bankrupt before his bankruptcy, and directed the trustees under that deed to deliver over to the assignee in bankruptcy all the property remaining undisposed of in their hands, but without deciding how far the trustees might be liable to the assignee for the proceeds of sales previously made and paid away to the creditors, and directed an account to be taken of these last-mentioned sums, in order to a final decree. It was held that the decree was not appealable, Mr. Justice McLean saying; " There is no sale or change of the property ordered which can operate injuriously to the parties."

In *Barnard* v. *Gibson*, the suit was one for the infringement of letters patent. By the decree of the Circuit Court a perpetual injunction was awarded, and it was referred to a master to ascertain and report the damages which the plaintiff had sustained. It was held that the decree was not appealable. The decree in that case was in all substantial particulars like the decree in the present case.

In *Craighead* v. *Wilson*, the decree of the Circuit Court ascertained the heirship of the plaintiffs and their relative rights in a succession, but referred it to a master to state accounts between the plaintiffs and defendants, and ascertain how much property remained in the hands of the latter, and how much had been sold, with the prices, and to ascertain what might be due from either of the defendants to the plaintiffs. It was held that the decree was not appealable.

In *Beebe* v. *Russell*, the bill prayed that the defendants might be ordered to convey to the plaintiff certain pieces of property, which it was alleged they fraudulently withheld from him, and account for the rents and profits. The Circuit Court decreed that the defendants should execute certain conveyances and surrender possession, and then referred the matter to a master to take an account of the rents and profits, giving instructions in regard to the manner of taking it. This court stated that the object of the statute in regard to appeals was to prevent a case from coming to this court from the courts below in which the whole controversy had not been determined finally, and that such final determination might be had in this court; and that whenever the whole controversy had been determined by the Circuit Court, and ministerial duties only were to be performed, although an amount due remained to be ascertained, the decree was final. The decree in that case was held not to be appealable.

In *Humiston* v. *Stainthorp*, which was a patent suit, the decree was like that in *Barnard* v. *Gibson*, and the appeal was dismissed.

In *Railroad Co.* v. *Swasey*, it was held that a decree of foreclosure and sale was not final, in the sense which allowed an appeal from it, so long as the amount due upon the debt

had not been determined, and the property to be sold had not been ascertained and defined.

In *Bostwick* v. *Brinkerhoff*, Chief Justice Waite stated the principle as follows : " The rule is well settled and of long standing, that a judgment or decree, to be final, within the meaning of that term as used in the acts of Congress giving this court jurisdiction on appeals and writs of error, must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered."

This view was repeated in *Grant* v. *Phœnix Ins. Co.*, where an appeal by the defendant from a decree in a foreclosure suit was dismissed, the decree neither finding the amount due nor ordering a sale of the mortgaged property, although it overruled the defence, declared the plaintiff to be the holder of the mortgage, and, in order to ascertain the amount due to it and other lien creditors and for taxes, referred the case to a master, and appointed a receiver to take charge of the property.

In *Dainese* v. *Kendall*, the principle was again asserted that " a decree, to be final for the purposes of an appeal, must leave the case in such a condition that if there be an affirmance here the court below will have nothing to do but execute the decree it has already entered."

The same view was maintained in *Parsons* v. *Robinson*.

It remains to see the principle upon which this court has acted in holding decrees to be appealable as final decrees.

In *Ray* v. *Law*, it was held that a decree for a sale under a mortgage was an appealable decree. Of course, this involves the proposition that the court below had ascertained and fixed the amount due under the mortgage.

In *Whiting* v. *Bank of the United States*, this court held that a decree of foreclosure of a mortgage and for a sale was a final decree, and that it was not necessary to the finality of it that the sale should have taken place and been confirmed. The court said that if the sale had been completed under the decree, the title of the purchaser would not have been overthrown or invalidated even by a reversal of the decree ; that,

consequently, the title of the defendants to the land would have been extinguished, and their redress upon a reversal would have been of a different kind from that of a restitution of the land sold; and that under a decree of foreclosure and sale, the ulterior proceedings were but a mode of executing such decree.

A leading case where this court held the decree below to be final was that of *Forgay* v. *Conrad*. The decree in that case ordered that certain deeds be set aside as fraudulent and void; that certain lands and slaves be delivered up to the plaintiff; that one of the defendants pay a certain sum of money to the plaintiff; that the plaintiff have execution for those several matters; and that the master take an account of the profits of the lands and slaves and an account of certain money and notes; and then concluded as follows: " And so much of the said bill as contains, or relates to, matters hereby referred to the master for a report, is retained for further decree in the premises; and so much of the said bill as is not now, nor has been heretofore, adjudged and decreed upon, and which is not above retained for the purposes aforesaid, be dismissed without prejudice, and that the said defendants do pay the costs." It was held that that decree was a final decree and appealable, Chief Justice Taney saying: " And when the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court, although so much of the bill is retained in the Circuit Court as is necessary for the purpose of adjusting by a further decree the accounts between the parties pursuant to the decree passed."

In *Bronson* v. *Railroad Co.*, it was held that a decree for the sale of mortgaged premises was a final decree, settling the merits of the controversy, and that the subsequent proceedings were simply a means of executing the decree. The same principle was applied in *St. Louis, Iron Mountain &*

*Southern Railroad* v. *Southern Exp. Co.* and in *Ex parte Norton.*

. In *Winthrop Iron Co.* v. *Meeker*, it was held that where a decree decides the right to the property in contest, and the party is immediately entitled to have it carried into execution, it is a final decree, although the court below retains possession of so much of the bill as may be necessary for adjusting accounts between the parties, the court remarking that such a case was different from a suit by a patentee to establish his patent and recover for infringement, because there the money recovery was a part of the subject matter of the suit.

Within the principles established by the foregoing cases, the decree now before us was not a final decree and the appeal must be

*Dismissed.*