**Bertel G. SMITH, Administrator of the Estate of Leo Jacobson, deceased, Appellant,**

v.

**Mike SHERMAN, Appellee (two cases).**

**Nos. 17726, 17727.**

United States Court of Appeals
Eighth Circuit.

Aug. 13, 1965.

---

Bernard Furman, of Epstein & Furman, New York City, Boyle & Schuler, Clear Lake, Iowa, for appellant.

Eugene Davis, of Duncan, Jones, Riley & Davis, Des Moines, Iowa, and Julius B. Sheftel, of Eisman, Lee, Corn, Sheftel & Bloch, New York City, Shull, Marshall, Mayne, Marks & Vizintos, Sioux City, Iowa, for appellee.

Before VOGEL, RIDGE and MEHAFFY, Circuit Judges.

RIDGE, Circuit Judge.

The instant appeals from the United States District Court for the Southern District of Iowa, concern only one portion of the issues involved in a multiparty interpleader action brought pursuant to § 1335, Title 28, U.S.C.A. This litigation arises from the financial collapse of a business complex composed of two entities, Fashion Farm, Inc., an Iowa corporation, and Swine Improvement Association, both transacting business primarily in the State of Iowa. A consideration of the background facts surrounding the formation and operation of these two businesses is necessary in order to understand the positions occupied by the various parties in the interpleader litigation and what is submitted for review in these appeals.

Both of the above-mentioned entities were the creatures of one Carroll Morris, who was the principal stockholder of Fashion Farm and the sole proprietor of Swine Improvement. Fashion Farm was originally in the business of providing certain services to farmers under a plan whereby Fashion Farm managed dairy herds and marketed the products, accounting to the owners of the animals for the profits, less a management fee. Later, Fashion Farm acquired its own animals which were placed on various farms in Iowa, subject to lease agreements with the farmers. Being desirous of further expanding the operation, Carroll Morris interested certain investors, one of whom was appellant, in a plan whereby the investors purchased cattle through Fashion Farm which they then leased back to Fashion Farm under a contractual arrangement that promised a guaranteed profit against a share of the actual proceeds derived from the animals. Normally a part of the price for the stock was paid in cash and the remainder by a promissory note, secured by a chattel mortgage on the specific animal. A bill of sale for the animal was then issued to the investor. This same general procedure was used to invest in hogs through the Swine Improvement Association. It was the custom for Morris to immediately negotiate the paper thus acquired to banks or other lenders. Appellee herein, a Sioux City, Iowa, businessman, was one of the major purchasers of notes from Morris and the only purchaser of swine paper. The arrangement between appellee and Morris was

initiated by appellee's son-in-law who subsequently was paid a two per cent finder's fee from the proceeds of each note bought by appellee. In addition, appellee received a substantial discount on the paper he purchased.

In August of 1962, Morris' entire financial structure collapsed, culminating in bankruptcy proceedings in November, following. Some of the investors, both in Fashion Farm and Swine Improvement, formed a new corporation, Cattle Owners Corporation, to take possession of and manage the cattle until an orderly liquidation could be effected. Appellant here claims that he [1] did not participate in the formation of Cattle Owners and did not agree to its representing him. However, there is evidence in the record which indicates that he did, at least, acquiesce in the program initiated by Cattle Owners. A manager was appointed and the corporation collected assets, both property and money, of the value of several hundred thousand dollars. Cattle Owners then brought the present interpleader action on November 23, 1962, and tendered the assets collected to the jurisdiction of the District Court. The investors (including appellant) were all named defendants adversely claiming ownership of the property involved in the interpleader action, and appellee was named as a defendant because of the liens he claimed on the cattle as a result of chattel mortgages held by him. Other lien-holders were also interpleaded. On the same date, the Court entered an order enjoining each of the various parties named as defendants in the interpleader action from instituting or prosecuting any other suit concerning the property, and it then appointed the manager of Cattle Owners as Receiver of the property. In December, 1962, appellant and other of the defendants moved to quash service of process on them for lack of jurisdiction, and also to dismiss the ac-

tion of interpleader on the merits; both of which motions were denied.

The main interpleader action is still pending in the District Court, the rights of none of the various claimants and lien-holders interpleaded therein having at this time been established. It is also to be noted that the trustee in bankruptcy is laying claim to right of possession of the property there involved, asserting that it should be part of the bankrupt estate, rather than subject to determination of the claims raised in the interpleader suit.

The instant appeals are only one aspect of many matters pending in the interpleader action, and involve only claimants Sherman and Jacobson. In his answer originally filed in the interpleader action, Sherman asserted the liens of his chattel mortgages on the cattle and swine which constitute the *res* of the interpleader action. Subsequently, on August 5, 1963, he made application to the Court for a hearing to determine "the validity and enforceability of the notes and mortgages" held by him, asserting reasons of convenience for determining this matter prior to the main issues pending before the interpleader Court. Such a hearing was held and the Court made findings of fact and law, and entered judgment to the effect that seven notes (totaling $185,000.00) and mortgages executed by Jacobson and now asserted by Sherman were "valid, subsisting obligations of * * * Leo Jacobson; (and that) said note(s) (are) now in default and the entire Principal * * * is due." (Par. added.) The judgment further gave Sherman the right to file additional pleadings and offer additional proof to support his claims to specific animals involved in the interpleader action. The Court did not enter any other judgment, holding that it had no jurisdiction to enter personal judgments against the makers of the notes,[2] nor did it rule as

---

1. Appellant died during the pendency of this litigation and was replaced as a party by his personal representative, but for convenience we will refer throughout to him individually.

2. That such was a proper concept of its jurisdiction, cf. Hagan v. Central Avenue Dairy, 180 F.2d 502, 17 A.L.R.2d 735 (9 Cir., 1950).

*i*

to the extent of priority of the various liens asserted.

Before considering the merits of these appeals, one other aspect of this litigation should be noted. In December of 1962, Sherman commenced an action against Jacobson on the notes here mentioned, in the Southern District of New York, Jacobson's place of residence. In January of 1963, the Court in the case at bar issued an order to the effect that its injunction of November 23, 1962, was not intended to restrict the right of Mike Sherman to maintain actions on the notes held by him, so long as such actions did not purport to affect the property which was the subject matter of the interpleader action. It is asserted by brief before this Court that Sherman is attempting to use the determination of validity below as the basis of a claim for collateral estoppel in his suit, *ante*, on the notes.

■ At the very outset, we note a problem which goes to the very heart of our jurisdiction to entertain these appeals. This is the question as to whether or not the judgment below is a final judgment, hence appealable under 28 U.S.C.A. § 1291. Although not raised by the parties, an answer to this question must be made, for the parties to these appeals may not, by mutual forbearance to raise such issue, confer jurisdiction on this Court. Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616 (1920); Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). That it is our duty to inquire into our jurisdiction, even though not questioned by the parties, is a settled principle of appellate review. United States v. Tinkoff, 153 F.2d 106, 107 (7 Cir., 1946); Guerin v. Guerin, 239 F.2d 909 (9 Cir., 1956).

Reviewing the procedural status of these cases, appellee, Mike Sherman, was named a party defendant in the interpleader action as one, among others, who " * * * claims a lien on certain property in the custody of plaintiff * * *." The Cattle Owners Corporation, who admittedly has possession of property the title to which was in dis-pute. In the answer filed by Sherman in that case, he asserted he is the holder of certain notes and mortgages and prayed that the property covered thereby be located and preserved, and further, that the Court recognize and enforce his liens on such property in this interpleader action. Subsequently, in an "Application" filed by Sherman (R., p. 56) he again asserted the existence of the notes and mortgages held by him and alleged that a number of the defendants in this action had challenged the validity of such notes and mortgages in their answers, and that it would "greatly expedite and simplify matters and alleviate hardship on the parties" to this action, if the Court would hear and determine the legal issues so raised prior to the determination of the remainder of the issues involved in the interpleader action. The Application then states:

"* * * This Application further asks that, upon such hearing, the Court determine that said notes and mortgages are valid and enforcible and that said mortgages constitute a lien against whatever interest of the makers thereof may ultimately be determined by the Court to exist in the security described in said mortgages." (R., p. 57).

Following a special master's recommendation, a hearing was held by the Court on a "Special Master's Report" (R., pp. 59–62) which resulted in Findings of Fact, and Conclusions of Law and Judgment Entry in part as follows:

"* * * *

"I.

"The Court has jurisdiction of the subject matter hereof and of all parties interested herein.

"II.

"The notes and mortgages * * * are valid, subsisting obligations of the makers thereof, and as between Mike Sherman and the makers of same, Mike Sherman holds a lien on the property described therein to the full extent expressed in the mort-

gage, and on the funds in the hands of the Receiver received from the sale thereof, and on any assets of the makers thereof in the possession of the Receiver and under the jurisdiction of this Court.

"III.

"On the record made, and inasmuch as Mike Sherman has not prayed for a money judgment in this Court, this Court does not have jurisdiction to enter personal judgment against the makers of the notes ordering them to pay the sums due thereon.

"IV.

"As between Mike Sherman and *other* claimants, the Court *reserves ruling* as to the extent of the liens of the various mortgages on livestock or the proceeds from the sale of same *now within the jurisdiction of this Court.* The Court also reserves ruling as to the order of priority of any conflicting liens. (Emphasis added.)

"JUDGMENT ENTRY

"Now, Therefore, It Is Hereby Ordered, Adjudged and Decreed as follows:

"I.

"That certain promissory note (description) and chattel mortgage securing same (description) are valid, subsisting obligations of Leo Jacobson; said note is now in default and the entire principal * * * is due and owing to Mike Sherman, plus interest from the date thereof, according to the terms of said note. (Paragraphs II, III, IV, V, VI, VII are identical except for the descriptions, each corresponding to one of the notes and mortgages then considered by the Court.)

*   *   *   *   *   *

"Mike Sherman has the right and is hereby granted permission to file such additional pleadings as may be necessary, and to offer such documentary or other proof as he wishes to offer in support of his claims to animals or proceeds from the sale thereof, by reason of the lien of his mortgages on animals or funds which are being claimed or which might be claimed by the makers of the notes and mortgages aforesaid." (R., pp. 287–291. Par. added.)

*   *   *

■ By virtue of § 1291 of Title 28 U.S.C.A., this Court has jurisdiction on appeal from " * * * all *final* decisions of the district courts * * *." We think it clear from the record before us that the instant matter presented for review manifestly is not a final decision within the ambit of § 1291, Title 28, supra, and all which is presently submitted in these appeals are to be related to an interlocutory order, merely one step in the process of reaching a final determination of the merits involved in an interpleader action. As such, we cannot find any "finality" therein, nor right of appeal therefrom, as provided by § 1292 of Title 28, relating to appeals from specified "interlocutory decisions."

■■ "Finality" in the context hereinabove considered has occupied innumerable courts through the years, but a general definition therefor seems to have emerged as being acceptable. A decree is said to be final when it terminates the litigation on the merits and leaves nothing further to be done but to enforce it by execution. Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); United States v. Bighorn Sheep Co., 276 F. 710 (8 Cir., 1921); Asher v. Ruppa, 173 F.2d 10 (7 Cir., 1949). A final judgment is the last word of the law, the final determination of the matters submitted to a court in an action. Karl Kiefer Mach. Co. v. United States Bottlers Mach. Co., 108 F.2d 469 (7 Cir., 1939). A final judgment is one which, if affirmed on appeal, leaves nothing to be done below other than to execute the already rendered judgment. Bostwick v. Brinkerhoff, 106 U.S. 3, 1 S.Ct. 15, 27 L.Ed. 73 (1882); Werner v. Zintmaster, 77 F.2d 74 (3 Cir. 1935).

From the point of view of appeal from an interlocutory decision, such has been defined as " * * * not that which decides the cause, but that which settles some intervening matter relating to the cause." Taylor v. Breese, 163 F. 678 (4 Cir., 1908). An interlocutory decree such as here, is but a step toward a final decree. It is one requiring further proofs to be taken before a final adjudication can be reached in the case at bar. Cf. Rexford v. Brunswick-Balke-Collender Co., 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864 (1913). In this connection, see United States v. Agne, 161 F.2d 331, (3 Cir., 1947) where it is pointed out that an appealable order must be one of substance rather than form, quoting with favor from Waialua Agr. Co., Ltd. v. Christian, 52 F.2d 847 (9 Cir., 1931), to the effect that a decree contemplating further proceedings in the lower court is not final, regardless of the form in which it is cast.

It is clear that the judgment here appealed from does not meet any of the above definitions of finality. If affirmed, —here is what remains to be done below: Further proofs must be submitted as to the extent and priority of the liens involved in this interpleader action, a matter which was expressly reserved for future decision by the District Court. Proof in relation thereto must be made as to whether the liens in fact apply to any of the res involved in this interpleader action, a matter also reserved for later determination by the Court below. Further pleadings are even contemplated by the order appealed from. Thus, much remains to be done in the cases at bar of a purely ministerial character before any final decree can be entered therein.

Although findings of fact as to the validity of the paper held by Mike Sherman has been made in the cases at bar, no final judgment was entered on that issue. The legal effect of the Court's holding regarding that issue is that it had no jurisdiction to "enter personal judgment against the makers of the notes" held by Sherman. The only effect the purported judgment appealed from could possibly have in the cases at bar is that of a threshold determination to define Mike Sherman's position in these cases prior to the court below going on to a final determination of the issues joined in this interpleader suit on their merits. In effect, all the District Court has decided is that Sherman has a claim * * * and that he is properly a party to this suit. It has not decided that such claim is to prevail over the other claim asserted in the interpleader action.[3]

It is held that a mere determination of contractual liability, without more, does not constitute a final judgment. A situation analogous to the one presently before us may be found in Burlington, C. R. & N. Ry. Co. v. Simmons, 123 U.S. 52, 8 S.Ct. 58, 31 L.Ed. 73 (1887), where a decree which established the right of a junior mortgagee to redeem a prior mortgage, and declared the amount due on his mortgage without decreeing its payment, was held to be merely interlocutory. This may be compared with the situation in the instant cases where the face amount of the notes held by Sherman is declared to be due, but no judgment is entered therefor. In Parsons v. Robinson, 122 U.S. 112, 7 S.Ct. 1153, 30 L.Ed. 1122 (1887), a foreclosure action was brought by holders of railroad mortgage bonds;—the lower court determined the amount due and the right of the plaintiffs thereto. The Supreme Court held the decree not to be final because the extent and priority of other liens had not been determined, nor had the property subject to the mortgage been specifically identified. This may be compared to the situation in the instant cases * * * where both of these questions are left unanswered and reserved for later determination by the Court.

A decree enjoining further removal of minerals from property and ordering an accounting of minerals previously removed therefrom was held not to be final where the accounting had not been ren-

---

3. See Paragraph IV, Conclusions of Law, supra.

dered and the decree as entered did not dispose of the entire controversy, because further action of the Court would be required subsequent to the accounting. The Keystone Manganese and Iron Co. v. Martin, 132 U.S. 91, 10 S.Ct. 32, 33 L.Ed. 275 (1889). See also Loew's Drive-In Theatres v. Park-In Theatres, 174 F.2d 547 (1 Cir., 1949); Canister Co. v. National Can Corporation, 163 F. 2d 683 (3 Cir., 1947).

In the light of the above authorities, and what we think is the clear import of the judgment before us, it is apparent that the instant appeals are premature and any consideration of the issues as attempted to be raised in these appeals should await a complete and final judgment that is entered in these cases. Until such time, we do not have the requisite jurisdiction to entertain the instant appeals.

Without prejudice to the parties to raise their various contentions on the merits at a proper time, the instant appeals are dismissed.