Mike **SHERMAN**, Plaintiff,

v.

Martha **JACOBSON**, as executrix of the last Will and Testament of Leo Jacobson, deceased, Defendant.

United States District Court
S. D. New York.

Nov. 3, 1965.

Eisman, Lee, Corn, Sheftel & Bloch, New York City, for plaintiff, Julius B. Sheftel, New York City, of counsel.

Epstein & Furman, New York City, for defendant, Bernard Furman, New York City, of counsel.

FEINBERG, District Judge.

### I

This action by plaintiff Mike Sherman was originally brought in December 1962 against defendant Leo Jacobson to collect the proceeds of seven notes. The complaint bases jurisdiction upon diversity, alleging that Sherman is a citizen of Iowa and Leo Jacobson a citizen of New York. Leo Jacobson died on October 2, 1964, shortly after plaintiff had moved for summary judgment and defendant had moved for a stay of proceedings. Pending substitution of a new party defendant, both motions were withdrawn. Subsequently, Martha Jacobson was appointed executrix of the last will and testament of Leo Jacobson. Thereafter, an uncontested motion by plaintiff to substitute Martha Jacobson as party de-

fendant was granted and both plaintiff's and defendant's motions were reinstated. Plaintiff argues that as a result of a previous litigation in a federal district court in Iowa,[1] defendant is collaterally estopped from litigating in this court any of the material issues. For the reasons indicated below, plaintiff's motion for summary judgment is granted, and defendant's motion for a stay is denied.

The unusual background of this litigation is as follows: In 1960, Carrol Morris, a resident of Iowa, proposed to Leo Jacobson, a retired manufacturer of ladies' garments, a business venture involving purchases of cattle and swine. The proposal was apparently attractive to Jacobson. He and Morris worked out a system whereby Jacobson enabled Morris to purchase cattle and swine on Jacobson's behalf and then lease the cattle to Fashion Farm, Inc., and the swine to Swine Improvement Ass'n, a proprietorship. The plan was that Fashion Farm and Swine Improvement, which were both owned or operated by Morris, would care for the livestock, and Jacobson would share in the profits from the sale of milk and offspring of the livestock.

The financing arrangements for the purchase of cattle and swine by Jacobson were as follows: Jacobson supplied in cash an amount equal to one-half of the purchase price required; the other half was obtained by Jacobson's furnishing notes and chattel mortgages payable to Fashion Farm and Swine Improvement which Morris discounted with purchasers of commercial paper. Accordingly, Jacobson invested in 1960 and 1961 approximately $750,000 in the purchase of cattle and hogs and became obligated to pay notes of approximately $300,000. Various friends and acquaintances of Jacobson, on the strength of his participation in the venture, also made similar investments so that nearly $4 million was invested in this way.

1. Cattle Owners Corp. v. Arkin, Civil No. 5–1323–44, S.D.Iowa, March 2, 1964, consolidated with Swine Owners Corp. v. Jacobson, Civil No. 5–1324–14, S.D.Iowa, March 2, 1964. The court's findings of fact, conclusions of law, judgment and decree are attached to plaintiff's moving papers as Exhibit C (hereinafter referred to as "Ex. C.").

The seven notes, totaling $185,000, upon which plaintiff sues in this court, were issued from January to May 1962,[2] and grew out of this plan of operation. Six of the notes were payable to Swine Improvement and one to Fashion Farm. The notes were all subsequently endorsed over to plaintiff Sherman. Each note was payable one year from date, but contained a provision which allows the holder to accelerate the due date if the value of the collateral securing the note becomes insufficient or there is a default in the payment of any part of the principal or interest.

In late 1962, both Fashion Farm and Swine Improvement acknowledged to the investors whose livestock they were managing their financial inability to continue operations. Two Iowa corporations were then formed by investors in the venture to take over the livestock, liquidate the investment in an orderly manner and salvage as much as possible from this financial debacle.[3] Thereafter, these two corporations each brought an interpleader action in the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1335 (1964). In each action, the investors, including Leo Jacobson, were all named defendants adversely claiming ownership of the property involved in the interpleader action, and Mike Sherman was also named as a defendant. Receivers were appointed and procedures were fixed by the court to determine the competing rights of various claimants to the cattle, swine, funds and property in the possession of the two Iowa corporations.

Plaintiff Sherman, as a holder of notes and mortgages of several investors, including those of Leo Jacobson, made claim upon the assets in the jurisdiction of the Iowa court. In the course of the interpleader actions, Jacobson asserted that the notes held by Sherman, which are the subject of the action before this court, were incomplete when issued as to date, amount, date of payment and description of collateral securing the payments.[4] Jacobson also asserted in Iowa that the notes were invalid because there was no delivery by Jacobson or a duly authorized agent;[5] that there was no consideration for the issuance of the notes and chattel mortgages;[6] that there was a material alteration of the names of the organizations to which the notes were allegedly issued and of the place where the notes were made and were made payable;[7] that Mike Sherman was not a holder in due course;[8] and that the notes were not negotiable.[9]

About six months after the interpleader actions were commenced, Sherman made application to the Iowa federal district court to have a determination of issues raised by the pleadings relating to the validity and enforceability of notes and mortgages held by him. Jacobson answered the application, requesting that it be denied, and giving his reasons therefor. After additional plead-

---

2. The notes issued to Swine Improvement were in the following amounts and were issued on the following dates: three for $15,000, issued January 15, 1962; one for $37,500, issued January 15, 1962; one for $17,500, issued January 15, 1962; one for $25,000, issued May 26, 1962. The note issued to Fashion Farm was for $75,000, and was issued April 24, 1962. However, plaintiff seeks judgment of only $60,000 on this note. Affidavit of Mike Sherman, sworn to June 18, 1964, in support of plaintiff's motion for summary judgment (hereinafter referred to as "Afft. of Mike Sherman"), pp. 3, 8.

3. Investors in cattle organized Cattle Owners Corporation; investors in swine organized Swine Owners Corporation.

4. Answer and Cross Claim of Leo Jacobson to Mike Sherman's claims in Swine Owners Corp. v. Jacobson, Civil No. 5–1324–14, S.D.Iowa, March 2, 1964, attached to plaintiff's moving papers as Exhibit D (hereinafter referred to as "Ex. D"), Division I, para. 3. A substantially identical answer was also filed by Jacobson in the action brought by Cattle Owners Corp. Afft. of Mike Sherman, p. 4.

5. Ex. D, Division I, para. 7.

6. Id., Division I, para. 8.

7. Id., Division I, para. 9.

8. Id., Division II, para. 3.

9. Id., Division II, paras. 3, 4.

ing and a pre-trial conference culminating in an order containing stipulations and otherwise narrowing the issues, a trial was ordered. It appears from the papers in this court that at the three-day hearing both parties testified and offered evidence.[10] After the hearing, Judge Stephenson of the Iowa court signed a document, dated March 2, 1964, entitled "Findings of Fact, Conclusions of Law, Judgment and Decree Re Validity of Notes and Mortgages Held by Mike Sherman."[11] Judge Stephenson found "that all interested parties have been duly served with summons herein and with notice of the hearing of" Sherman's application "and that this Court has jurisdiction of the subject matter and the parties."[12] Judge Stephenson, "on the issues concerning the validity of the notes and mortgages held by Mike Sherman * * * and after having examined the files and having given full consideration to all of the evidence adduced,"[13] made findings of fact totalling about twelve legal-size pages and conclusions of law of one page and entered a judgment covering eleven pages. He found, *inter alia*, that Sherman had purchased the notes and mortgages in good faith and for value in the ordinary course of business and before they were due, that Jacobson failed to establish his affirmative defenses,[14] that each note of Jacobson sued upon by Sherman here is a valid subsisting obligation of Jacobson, that each note is now in default, and that the principal as claimed by Sherman is due and owing to him, plus interest from the date of each note according to its terms.[15] Since the basis of the Iowa court's jurisdiction was in rem (possession of the assets of the Iowa corporations), and since Sherman did not pray for a money judgment in that court but only for a judgment establishing the validity of the notes, the court held that it did "not have jurisdiction to enter a personal judgment against the makers of the notes ordering them to pay the sums due thereon."[16] However, Jacobson, as well as Sherman, personally appeared in the Iowa actions and litigated through counsel the issues affecting the validity of the notes. An appeal was taken from the March 2, 1964 judgment of the Iowa court, and on August 13, 1965, that appeal was dismissed without prejudice for lack of jurisdiction in the appellate court. Smith v. Sherman, 349 F.2d 547 (8th Cir. 1965).

The suit in this court against Jacobson directly on the notes was authorized by the Iowa district court[17] and was brought here not long after the commencement of the interpleader proceedings in Iowa. In this court, defendant Jacobson asserts the following affirmative defenses to the notes: (1) the notes and mortgages were signed in blank and were incomplete in various respects; (2) the completion of the notes was effected without defendant's authority; (3) there was no delivery of the instruments and plaintiff is not the owner of them; (4) the notes were materially altered by changing the name of the payee and place of making and payment; and (5) defendant received no consideration for the notes and plaintiff had notice of the lack of consideration. The defense of plaintiff's knowledge of lack of consideration was not raised and decided in the Iowa action, but the alleged lack of con-

10. Afft. of Mike Sherman, p. 7.

11. Ex. C.

12. Id. at 2.

13. Ibid.

14. Ex. C, pp. 1–8, 14.

15. Id. at 15–17.

16. Id. at 14–15.

17. Order dated February 15, 1963, attached to affidavit of Julius Sheftel, sworn to August 24, 1964, in opposition to defendant Jacobson's motion for a stay. The order states that a prior stay in the Iowa proceedings "does not in any way restrict or affect the right of defendant Mike Sherman to institute and maintain actions for the enforcement of notes held by him and made by other parties to this action. * * * "

sideration was raised and was decided adversely to Jacobson.[18] All of the other defenses asserted here were also raised and decided adversely to Jacobson in the Iowa proceedings.

## II

In support of the motion for summary judgment, plaintiff points out that there can be no dispute as to any of the material facts because they have already been decided and that the only defenses raised have also already been decided adversely to defendant in the Iowa action. In opposition to the motion for summary judgment, Jacobson argues that (1) a determination in an in rem action (which the Iowa action concededly was) cannot be used as the basis for a judgment in an in personam action; (2) collateral estoppel should not be applied "until there is a final determination which is upheld on appeal";[19] and (3) plaintiff, by interposing a claim in the Iowa interpleader action, chose to await distribution there and cannot proceed here.

■ In determining the effect to be given the Iowa judgment, neither party has explicitly considered the conflicts question of what law is applicable.[20] Some of the conflicts problems lurking in the record are formidable in the abstract; i. e., does New York law, Iowa law or federal law apply in resolving each of the three issues stated above?[21] See United States v. United Air Lines, Inc.,

216 F.Supp. 709, 718–729 (D.C.Nev. 1962), aff'd in part sub nom. United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir. 1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964), and cases cited therein. However, resolution of the choice of law question is not crucial because there do not appear to be material differences between the Iowa, New York or federal decisions affecting the issues raised here.

■ As to the argument that a determination in an in rem action cannot be used in an in personam action, defendant cites Hagan v. Central Avenue Dairy, Inc., 180 F.2d 502 (9th Cir. 1950). However, there is an exception to the general rule where, as here, defendant appears and defends the in rem action. In such a case, defendant is bound by the facts upon which the prior judgment is based if he has actually litigated the question of the existence of such facts. This distinction is made in Restatement, Judgments §§ 73–76 (1942), which deal with in rem and quasi in rem proceedings. Thus, section 75 provides:

(1) In a proceeding quasi in rem to determine interests in property the judgment is conclusive upon the persons named as defendants as to their interests in the property.

(2) A judgment in such a proceeding will not bind a defendant personally unless the court has juris-

---

18. See note 6, supra; Ex. C, pp. 7, 14.

19. Letter to court, dated August 18, 1965, from defendant's counsel.

20. Plaintiff cites New York cases; defendant cites one federal decision and two state cases, neither of which is from New York or Iowa.

21. Thus, is the effect to be given the judgment of a federal court in Iowa determined by the full faith and credit concept or by the fact that all federal courts are components of a single judicial system? See Caterpillar Tractor Co. v. Int'l Harvester Co., 120 F.2d 82, 85, 139 A.L.R. 1 (3d Cir. 1941). Compare Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 524, 51 S.Ct. 517, 75 L.Ed. 1244 (1931) with Durfee v. Duke, 375

U.S. 106, 107 n. 2, 84 S.Ct. 242, 11 L.Ed. 2d 186 (1963). If full faith is to be given, must the res judicata effect of the Iowa judgment be determined by federal or Iowa law? What law governs on the question of election of remedies? See Zdanok v. Glidden Co., 327 F.2d 944, 956 (2d. Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); Kern v. Hettinger, 303 F.2d 333, 340 (2d Cir. 1962); Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281, 301 n. 40 (1957); Comment, Res Judicata in the Federal Courts: Application of Federal or State Law: Possible Differences Between the Two, 51 Cornell L.Q. 96 (1965).

diction over him, and it is not conclusive as to a fact upon which the judgment is based *unless the defendant has actually litigated the question of the existence of the fact.* (Emphasis added.)

This section was recently quoted with approval in Sherman v. Acker, 151 N.Y. L.J., June 30, 1964, p. 11, col. 2 (Sup. Ct.), which grows out of the same background as plaintiff's action here. In Sherman v. Acker, plaintiff Sherman also sued in the New York state courts on other notes executed by some of defendant Jacobson's co-investors. In that case, the court dealt with issues similar to those raised here, and granted plaintiff's motion for summary judgment. Defendants in Sherman v. Acker had originally entered the Iowa interpleader proceedings, as defendant Jacobson did. Thereafter, they sought to withdraw their objections to plaintiff Sherman's claim in Iowa and, when this was denied, did not participate further in the Iowa proceedings. Despite this, the New York court in Sherman v. Acker ruled that defendants were barred by the doctrine of collateral estoppel, relying heavily on the section of the Restatement quoted above. Plaintiff, of course, is in a stronger position in this case since defendant Jacobson, unlike defendants in Sherman v. Acker, not only appeared in Iowa but actually litigated the issues affecting the validity of the notes.

■ Similarly, section 74 of Restatement, Judgments, which deals with in rem actions—relating to status rather than property (the same rule applies to property)—makes the same point that an in rem judgment is not conclusive as to the facts upon which it is based unless the defendant has actually litigated the issue of the existence of the fact, which is the situation here. That section has also been quoted with approval by the New York courts. In re Holmes' Estate, 291 N.Y. 261, 270, 52 N.E.2d 424, 150 A.L.R. 447 (1943); In re Zietz' Estate, 207 Misc. 22, 135 N.Y.S.2d 573, 580

(Surr.Ct.1954), aff'd, 285 App.Div. 1147, 143 N.Y.S.2d 602 (1st Dep't 1955). Iowa law does not seem to the contrary. See Trustees of Green Bay, etc. v. Alexander, 252 Iowa 801, 108 N.W.2d 593, 597 (1961); In re Ramsay's Estate, 240 Iowa 50, 35 N.W.2d 651, 656 (1949); Kolb v. Mall, 187 Iowa 193, 174 N.W. 226, 230 (1919). Nor do the federal cases differ. Smith v. Great Atl. & Pac. Tea Co., 170 F.2d 474, 478 (8th Cir. 1948); United States for Use and Benefit of Allen Const. Corp. v. Verrier, 179 F.Supp. 336, 345 (D.Me.1959).

■ There can be no serious question in this case that although the cause of action is different the issues raised by defendant here are identical with those litigated in the Iowa action between the same parties, that resolution of these issues depends upon findings of fact, and that the issues of the existence of these facts were actually litigated and determined in the Iowa action; *e. g.,* authority of Morris to complete the notes, delivery of the notes, etc. Accordingly, defendant's first argument against plaintiff's motion for summary judgment must fail.

■ Defendant's second argument is that the doctrine of collateral estoppel should not be applied here because the Iowa judgment is not yet final. Defendant's original memorandum in opposition to the motion for summary judgment argued, without elaboration, that "plaintiff should not be permitted to proceed herein on the basis of the Iowa decision until Defendant's appeal therefrom is finally determined." [22] When the memorandum was submitted, an appeal from the Iowa district court decision was pending. As indicated above, that appeal has now been dismissed, without prejudice, for want of jurisdiction in the court of appeals. Smith v. Sherman, 349 F.2d 547 (8th Cir. 1965). During pendency, plaintiff had claimed that "the doctrine of estoppel by judgment is not in the least affected by the pendency of an appeal"; [23] plaintiff now asserts that the

22. Defendant's Memorandum in Opposition to Motion for Summary Judgment, p. 3.

23. Plaintiff's Memorandum in Support of Motion, p. 8.

dismissal of the appeal "purely on a technical ground" does not lessen the effectiveness of the Iowa decision for collateral estoppel purposes. Defendant has answered this contention with several arguments, which will be dealt with seriatim below.

Although there is no question that a prerequisite for application of the doctrine of collateral estoppel is a *final* judgment, Restatement, Judgments § 41 (1942), the concept of finality is not easily defined. It is true that "finality" has sometimes been equated with "appealability" in the context of a particular case, e. g., United States v. Physic, 175 F.2d 338 (2d Cir. 1949); United States v. One 1946 Plymouth Sedan Automobile, 167 F.2d 3 (7th Cir. 1948); Restatement, Judgments § 41, comment a (1942). However, "final" in the res judicata or collateral estoppel sense is not identical to "final" in the rule governing the jurisdiction of appellate courts. Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1961), cert. denied, Dawson v. Lummus Co., 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). An examination of the policies underlying res judicata and collateral estoppel and the requirement that judgments be "final" to be appealable shows why this is so. Res judicata is not merely a matter of procedure inherited from a more technical era but is founded on the policy of preventing needless litigation. Angel v. Bullington, 330 U.S. 183, 192–193, 67 S.Ct. 657, 91 L.Ed. 832 (1947). It is "a principle which seeks to bring litigation to an end and promote certainty in legal relations." United States v. Munsingwear, Inc., 340 U.S. 36, 38, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). The final judgment rule is designed to prevent "enfeebling judicial administration" which would result from "permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).

Effectuation of these policies would clearly be hampered if "final" were given the same meaning in each context. A consistently broad interpretation of the term would flood the appellate courts with piecemeal litigation, while a narrow interpretation would allow a litigant to bring an endless number of law suits. It follows, therefore, that "final" for res judicata purposes must be construed in the light of the considerations of that doctrine, rather than be automatically equated with "final" in the final judgment rule.

Bearing this in mind, there must still be determined exactly what the requirement of finality entails in the collateral estoppel context. A judgment may be final, despite the fact that an appeal from it has not been decided, whether because the appeal is pending, United States v. Nysco Labs., Inc., 318 F.2d 817 (2d Cir. 1963) (per curiam), or the party has lost its right to appeal because of the circumstances of the case, United States v. Munsingwear, Inc., supra (case became moot), or the law does not provide for review, Johnson Co. v. Wharton, 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429 (1894) (jurisdictional amount required for appeal not satisfied). The form of the adjudication is not decisive, 2 Freeman, Judgments § 666 (5th ed. 1925), nor is the label, such as "interlocutory," given the decision. Bee Mach. Co. v. Freeman, 131 F.2d 190 (1st Cir. 1942), aff'd, 319 U.S. 448, 63 S.Ct. 1146, 87 L. Ed. 1509 (1943). The judgment may be final as to some matters, even though the litigation continues as to others, Restatement, Judgments § 41, comment c (1942), and the decision may have adjudicated liability only, leaving the assessment of damages in abeyance. Zdanok v. Glidden Co., 327 F.2d 944, 955 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

Courts have not often explored the underlying considerations in defining finality for the rule of res judicata. At an early date, Judge Learned Hand surmised that "final" might mean that the court rendering the judgment has finally

parted with the power to revise it. L. E. Waterman Co. v. Modern Pen Co., 193 F. 242 (S.D.N.Y.), modified, 197 F. 534, 536 (2d Cir. 1912), aff'd, 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142 (1914). This possible test was geared in part, however, to the former practice under which the passing of the term of court ended the trial judge's dominion over his decree. Id. at 244. Under Fed.R.Civ.P. 60(b) a motion to relieve a party from a judgment may be made on certain grounds within any reasonable time, and so this test could not furnish a complete answer today.

In more recent years, the New York Court of Appeals analyzed the problem in Bannon v. Bannon, 270 N.Y. 484, 1 N.E.2d 975, 105 A.L.R. 1401 (1936), an action for separation brought by the wife. Defendant there denied the existence of a marriage, and when plaintiff applied for alimony pendente lite the court appointed a referee to hold a hearing on the question of the marriage and the state of defendant's finances. The referee's report finding no marriage was confirmed on motion, whereupon the defendant amended his answer to include the defense, based on the report, of res judicata. Pointing out that a decision on an application for temporary or incidental relief may be vacated or modified during the course of the litigation by the tribunal rendering it, Judge Lehman stated (270 N.Y. at 490–491, 1 N.E. 2d at 978):

> The essential element of a conclusive adjudication is finality of the proceedings. A judicial decision can constitute a conclusive adjudication of question of fact or law only when rendered in a proceeding in which a court had jurisdiction to render an irrevocable and final decision upon such question. * * * Though an interlocutory judgment may require the immediate performance of acts which irremediably affect the rights of the parties, and in

that sense may be final, yet in so far as it purports to decide the issues litigated in the action, the decision is subject to alteration and revision. * * *

> The test then is not the form of the decision, but the nature of the proceedings in which the adjudication is made. If in such proceedings the jurisdiction of the court is limited in scope so that particular questions may be decided only provisionally or for a limited purpose, a decision in any form can be given effect only within the same limits.

Concluding that the purpose of the reference was to inform the conscience of the court and that the trial judge had merely denied a motion for temporary alimony rather than rendered a final judgment, the court of appeals denied the defense of res judicata.

More recently, the concept of finality in this sense was discussed by the Court of Appeals for the Second Circuit in Lummus Co. v. Commonwealth Oil Ref. Co., supra. In that case, a prior decision of the First Circuit [24] that Commonwealth had failed to raise a substantial issue as to alleged fraud in the inducement of an agreement between it and Lummus Company was held conclusive against Commonwealth on the same issue in another litigation between the same parties. In discussing the problem, Judge Friendly pointed out (297 F.2d at 89):

> Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i. e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a

24. Lummus Co. v. Commonwealth Oil Ref. Co., 280 F.2d 915, 91 A.L.R.2d 912 (1st Cir.), cert. denied, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960).

# 270

court sees no really good reason for permitting it to be litigated again.

The reference to "the nature of the decision" in the quoted language appears to be similar to the emphasis by Judge Lehman on the "nature of the proceedings in which the adjudication is made." Judge Friendly has also pointed out recently that "general expressions that only final judgments can ever have collateral estoppel effect are considerably overstated." See Kurlan v. Commissioner of Internal Revenue, 343 F.2d 625, 628–629 n. 1 (2d Cir. 1965); see also Zdanok v. Glidden Co., supra. The Iowa law on this subject is certainly not inconsistent with this analysis and, as far as is ascertainable, is in accord with it. Trustees of Green Bay, etc. v. Alexander, 252 Iowa 801, 108 N.W.2d 593 (1961); In re Ramsay's Estate, 240 Iowa 50, 35 N.W.2d 651, 656–658 (1949).

Applying the tests set forth in these cases, I conclude that Judge Stephenson's decision in Iowa is final enough for the application of the doctrine of collateral estoppel. As noted above, the Iowa district court held that the notes of Jacobson sued upon by Sherman represented valid subsisting obligations in a judgment containing findings of fact and conclusions of law. There is no indication that this decision was intended to be "provisional and subject to change and modification in the future by the same tribunal," Bannon v. Bannon, supra, 270 N.Y. at 489, 1 N.E.2d at 977, or that it was "avowedly tentative," Lummus Co. v. Commonwealth Oil Ref. Co., supra. The district court "had jurisdiction to render an irrevocable and final decision upon" the question, Bannon v. Bannon, supra, 270 N.Y. at 490, 1 N.E.2d at 978. Nothing in the Iowa proceeding suggests that "the questions necessarily decided upon the application * * * [can] be litigated anew in any litigation pending in the same tribunal," id. at 491, 1 N.E. 2d at 978, or that the hearing before

Judge Stephenson was not adequate. It is true that "the opportunity for review" referred to in Lummus [25] is not yet available to defendant Jacobson as a result of the dismissal of the appeal by the Eighth Circuit, Smith v. Sherman, 349 F.2d 547 (8th Cir. 1965). However, this opportunity will one day materialize. To deny collateral estoppel effect to the Iowa judgment until an appeal is taken and decided in Iowa offers alternative but unattractive possibilities. One is to require plaintiff to forego his remedy on the notes against the Jacobson estate for a period of time the length of which he cannot control. The other is to put plaintiff to the trouble and expense of litigating all over again the issues already decided in Iowa.

The only weighty opposing consideration is that an appeal in Iowa may eventually destroy the effect of the judgment which plaintiff uses here for collateral estoppel. But generally, the possibility of appeal, as already noted, does not prevent application of the doctrine of collateral estoppel. United States v. Nysco Labs., Inc., supra; Restatement, Judgments § 41, comment d (1942). Should the Iowa decision ultimately be reversed, defendant will not be without remedy, Fed.R.Civ.P. 60(b), even if an appeal is pending in this circuit or has already resulted in affirmance. 7 Moore, Federal Practice ¶ 60.26 [3] (2d ed. 1955). It may be argued that Sherman might take steps which could cut off Jacobson's right to appeal in Iowa; i. e., withdrawing the claim on these notes in the Iowa proceedings. There are intimations in the papers before this court that such an event is unlikely because of economic reasons and that Sherman would have to continue to press his claims in the Iowa actions in order to obtain full satisfaction of the amounts owed him by Jacobson.[26] But if this were not the case, it should be pointed out that any attempt by plain-

25. But cf. Johnson Co. v. Wharton, 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429 (1894).

26. Affidavit of Leo Jacobson, sworn to August 12, 1964, in support of defendant's motion for a stay of proceedings, p. 9.

tiff Sherman to nullify Jacobson's right to appeal in Iowa would certainly be regarded by the writer of this opinion as a ground for seeking relief under Rule 60(b). Of course, this does not imply that Sherman should refrain from whatever remedies he may have in New York to collect upon the judgment entered as a result of this opinion. It should also be pointed out that the fact that the Iowa interpleader action is not yet completed did not prevent similar application of the doctrine of collateral estoppel in three recent New York decisions. United Home Bank & Trust Co. v. Kirshman, 154 N.Y.L.J., Oct. 22, 1965, p. 16, col. 8 (Sup.Ct.); United Home Bank & Trust Co. v. Jacobson, 154 N.Y.L.J., Oct. 8, 1965, p. 16, col. 3 (Sup.Ct.); Sherman v. Acker, supra. All of these decisions grow out of the same background as the instant case; one (Sherman v. Acker) involves the same plaintiff as here; another involves the same defendant (United Home Bank & Trust Co. v. Jacobson); and the two brought by United were handed down well after dismissal of Jacobson's appeal by the Eighth Circuit.

In sum, after full consideration, it does seem that on the issues affecting the validity of the notes, this court "sees no really good reason for permitting it to be litigated again." Lummus Co. v. Commonwealth Oil Ref. Co., supra. For all intents and purposes, defendant has had his day in trial court upon the issues adjudicated in Iowa.

 Defendant contends, however, that the Iowa judgment cannot be used as an estoppel because the opinion in the Eighth Circuit dismissing the appeal refers to a disclosure in defendant's brief of the attempt by plaintiff to use the judgment as an estoppel in the action pending here.[27] As the court of appeals opinion makes no other reference to collateral estoppel, however, it is futile to attempt to attach any significance to the court's remark. Defendant further claims that the opinion makes it

clear (although not expressly) that the district court's decision cannot be used as the basis for an estoppel, quoting the following (349 F.2d at 551):

> We think it clear from the record before us that the instant matter presented for review manifestly is not a final decision within the ambit of § 1291, Title 28, supra, and all which is presently submitted in these appeals are to be related to an interlocutory order, merely one step in the process of reaching a final determination of the merits involved in an interpleader action.

But this statement means only what it says, namely, that the matter "is not a final decision within the ambit of" the statute granting jurisdiction to the courts of appeals. Although the district court's decision may have been "merely one step" toward a final determination of the merits of the interpleader action, it does not follow, as indicated above, that the matter adjudicated was not itself finally determined. Restatement, Judgments § 41, comment c (1942). Defendant further quotes from the Eighth Circuit opinion to demonstrate that the lower court's decision has no substantial weight (349 F.2d at 552 [Footnote omitted.]):

> Although findings of fact as to the validity of the paper held by Mike Sherman has [sic] been made in the cases at bar, no final judgment was entered on that issue. The legal effect of the Court's holding regarding that issue is that it had no jurisdiction to "enter personal judgment against the makers of the notes" held by Sherman. The only effect the purported judgment appealed from could possibly have in the cases at bar is that of a threshold determination to define Mike Sherman's position in these cases prior to the court below going on to a final determination of the issues joined in this interpleader suit on their merits. In effect, all the Dis-

27. 349 F.2d at 550.

trict Court has decided is that Sherman has a claim * * * and that he is properly a party to this suit. It has not decided that such claim is to prevail over the other claim asserted in the interpleader action.

But the decision that "Sherman has a claim" is all that the district court need have decided for purposes of applying the doctrine of collateral estoppel here. As to the court of appeals statement that "no final judgment was entered," it must be remembered that earlier the court prefaced its discussion with " 'Finality' in the context hereinabove considered * * *." There is little room for doubt that the court was occupied solely with the principles and policies of the law of appealability.

Finally, defendant argues that remaining determinations to be made by the Iowa district court may vitally affect the question of plaintiff's right to judgment here, and any "final determination" in Iowa will still be subject to defendant's right to appeal. There is nothing appearing on the face of the Iowa record that gives support to defendant's first proposition, and the second has already been discussed. For all of the above reasons, the argument that collateral estoppel should not be applied here is rejected.

Defendant's third argument against summary judgment is that plaintiff, by interposing a claim in the Iowa interpleader action, elected distribution there so as to bar this action. Defendant cites no authority to support this position. Ordinarily there is an election of remedies only when a litigant by means of an overt act chooses between two inconsistent rights when there is but one remedy. *E. g.*, McFadden Sec. Co. v. Stoneleigh Garage Co., 60 App.D.C. 400, 55 F.2d 1025, 1027 (1932); Jennings v. McKeen, 245 Iowa 1206, 65 N. W.2d 207 (1954); Smith v. Kirkpatrick, 305 N.Y. 66, 73, 111 N.E.2d 209 (1953). There is no inconsistency between participating in the interpleader action in order to make a claim to the security for defendant's obligation and proceeding against defendant personally on his primary obligation to pay the notes. Moreover, it would be difficult to find the type of conclusive election urged by defendant in the face of the authorization of this action by the Iowa court.[28]

Accordingly, plaintiff's motion for summary judgment is granted, and defendant's cross-motion for an order staying proceedings pending an appeal from the Iowa judgment is denied.

Settle order on notice.

---

28. See note 17 supra and accompanying text.